Mercantile Trust Co. v. South Park Residence Co.

CASE 42—PETITION EQUITY—APRIL 27.

# Mercantile Trust Co. v. South Park Residence Co.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. VOID JUDGMENT—WARNING ORDER.—Where the land of a non-resident is sold under decree of the United States Circuit Court, the sale is void if it does not appear from the record that publication of the warning order was made for the length of time required by the Federal statute.

2. A COVENANT OF SEISIN is satisfied only by the transfer of an indefeasible title, and is technically broken as soon as it is made if the title be from any cause defeasible. Therefore, an action for the breach lies at once and before eviction.

3. A MORTGAGE IS A MERE SECURITY FOR DEBT, and, substantially, both at law and in equity, the mortgagor is the real owner of the property mortgaged.

4. THE MEASURE OF RECOVERY FOR BREACH OF COVENANT OF SEISIN is the consideration paid with interest, the recovery being only *pro tanto* where the breach of the covenant is only partial; and where there has been an eviction, the covenantor is also liable for the legal costs incurred in resisting the eviction and for a reasonable fee paid to counsel in defending the action. But where there has been no eviction, the vendee having purchased the outstanding title, there can be no recovery of attorneys' fees paid or expenses incurred in obtaining the title.

MARC MUNDY FOR APPELLANT.

1. The unsatisfied mortgage barred an eviction of the purchaser in possession, and appellee's voluntary surrender by purchasing the rights of outside claimants was an unlawful surrender. While it was not necessary for appellee to wait until ousted by judgment and writ of possession, yet he should have waited until action was brought wherein appellant might have been substituted to defend. (Hamilton v. Cutts, 4 Mass., 350; Rawle on Covenants for Title, pp. 264, 265; Sprague v. Baker, 17 Mass., 590; Dupuy v. Roeback, 17 Ala., 488.)

By a conveyance of mortgage, the fee vests in and remains in the mortgagee until satisfaction of the mortgage, though held for security only. (Fitzhugh v. Croghan, 2 J. J. Mar., 438; McGoodwin v.

Mercantile Trust Co. v. South Park Residence Co.

Stephenson, 11 B. M., 21; Rawle on Covenants for Title, p. 368; Bartlett v. Borden, 13 Bush, 47.)

2. If the grantor was seized in fact, though not of an indefeasible estate, then the covenant of seisin is not broken. (Bachus v. McCoy, 3 Ohio, 211; Forte v. Burnett, 10 Ohio, 327; Devore v. Sutherland, 17 Ohio, 60; Rawle on. Covenants, p. 63; Blanchard v. Cushman, 2 Greenleaf, 268.)

.3. The fact that the court erred in directing the warning order does not divest the purchaser at decretal sale of title to the land. (Yocum v. Foreman, 14 Bush, 494.)

The judgment was erroneous only and not void. (Bullitt v. Commonwealth, 14 Bush, 74; Dorsey v. Kendal, 8 Bush, 294; Benningfield v. Reed, 8 B. M., 102; Beasly v. Doty, 3 Dana, 32.)

STONE & SUDDUTH for appellee.

1. The decree of the Federal court is void, and the sale made pursuant thereto conferred no rights on the purchaser as to the interest of the six abs nt defendants. (Hunt v. Wickliffe, 2 Pet., 214; In re King 7 Nat. Bankrupt Register, 279; Brownfield v. Dyer, 7 Bush, 505; Gray v. Larrimore, 4 Sawyer, 645; Cissel v. Pulaski County, 3 McCreary, 446.)

2. The covenant of seisin is broken the instant it is made, if at that time the grantor did not have good title, and a suit may be maintained for a breach of the covenant before and without any eviction. (Fitzhugh v. Croghan, 2 J. J. Mar, 438; Rawle on Covenants, 4 ed., p. 83.)

3. A covenant for seisin is satisfied only by the transfer of an indefeasible title. (Howell v. Richards, 11 East, 641.)

.4. The grantee is not bound to wait until he has been disturbed in his possession, but may purchase in the outstanding title and recover from the grantor the reasonable price which he has fairly and necessarily paid for the same. ('Warvelle on Vendors, vol. 2, p 988; Anderson v. Kuon, 20 Ala., 156; Berry v. Berry, 9 B. M., 487; Vanmeter v. Griffith, 4 Dana, 90; Rawle on Covenants, pp. 289, 175.)

And he may also recover his necessary costs, including a reasonable attorney's fee. (Robertson v. Lemon, 2 Bush, 301; Warvelle on Vendors, vol. 2, p. 1010.)

.5. A mortgage is simply a security to the mortgagee for his debt; and the mortgagor still remains the owner. (Jones on Mortgages, vol. 1, sec 31; Woolley v. Holt, 14 Bush, 788; Douglass v. Cline, 12 Bush, 608; Taliaferro v. Gay, 78 Ky., 496.)

JUDGE HAZELRIGG delivered the opinion of the court.

Mrs. Dorcas White was the owner of a tract of some three hundred and eighty acres of land near

Louisville, Kentucky. In 1875 her son, Theodore S. White, borrowed from the Mercantile Trust Company of New York the sum of five thousand dollars, and Dorcas and her husband, by way of mortgage, conveyed the land named to the Trust Company to secure the payment of this debt. The loan was made on five years' time, but the interest not being paid, in March, 1878, the company instituted proceedings in the circuit court of the United States for the District of Kentucky, seeking to subject the lands to the payment of its debt. Prior to this suit Dorcas White had died, and the action was against her children, *eight* in number, six of whom were residents of the State of Arkansas. Only two of them were found in the district, and thereupon an order of warning was made against the six children, and, after publication for *ten successive days* in a daily paper in Louisville, a judgment of sale was obtained. A receiver had theretofore been appointed by the court, who had taken charge of the property. At the commissioner's sale in September, 1878, the company became the purchaser at the price of four thousand four hundred dollars, and in November, 1888, the sale was confirmed, and a deed made to the company.

On November 17, 1888, the Trust Company sold and conveyed the property to Peddicord in consideration of the sum of four thousand dollars, and thereafter, in August, 1889, Peddicord sold and conveyed the same property to the South Park Residence Company in consideration of the sum of nineteen thousand four hundred and fifty-six dollars and fifty-six

cents. In the deeds from the Trust Company to Peddicord and from Peddicord to the South Park Residence Company, these covenants are found: "And the said first party further covenants with the said second party, his heirs and assigns, that they are lawfully seized in fee-simple of the property herein conveyed; that they have good right and full power to convey the same; that said property is free from incumbrance, and 'the said first parties and heirs shall make all further assurance of the lands as shall be lawfully and reasonably required by said second party, his heirs or assigns."

The only title that the Trust Company had to the property was by virtue of the Commissioner's deed obtained in the United States Circuit Court proceeding named above; and in that suit the Federal Statute of March 3, 1875 (Sup. to U. S. Rev. Stat., vol. 1, page 176), requiring orders of warning to be published in such manner as the court may direct, not less than *once a week for six consecutive weeks*, was ignored, and publication was made for only ten successive days. It follows, therefore, that the interest of six out of the eight children of Dorcas White was sold, or attempted to be sold, when they were not before the court. Upon the authority of Hunt v. Wickliffe, 2 Peters, 214–15, and other cases of the United States Supreme Court to the same effect, we are of opinion that this jurisdictional fact not appearing of record—that is the publication required by law—the decree and sale thereunder did not divest the title of the six children in and to the land sold, but that as to them the judgment was absolutely void.

Therefore, at the time of the conveyances from the Trust Company to Peddicord, and from the latter to the Residence Company, these six children as heirs of their mother, Dorcas, were the owners of six-eighths of the property, and hence, the covenants of the first parties to said deeds that "they were lawfully seized in fee-simple of the property therein conveyed, and that they had good right and full power to convey the same," were broken immediately upon the making of them.

In Fitzhugh, &c., v. Croghan, 2 J. J. Mar., 429, it is said: "In a suit on a covenant of *seisin*, the only question is, was the covenantor *seized* of the legal title at the instant when he made the covenant? If he were, his covenant is not broken. It is a covenant '*in presenti*,' and can not be affected by supervenient facts or events. * * The covenant of *seisin* is broken the instant it is made, or never." Mr. Rawle in his work on Covenants for Title, page 81, says that the weight of authority is to the effect that a "covenant of seisin is satisfied only by the transfer of an *indefeasible* title," and is "technically broken as soon as it is made, if the title be, from any cause, defeasible."

Mere possession, we think, does not satisfy the covenants of the grantors. The *right* of possession must also have been in them as well as the fee and the right to convey.

It is insisted that the mortgage of the Whites passed the fee to the Trust Company, and that it was thus seized in fee, and empowered to convey in satisfaction of its covenant. It is true that in some

comparatively late cases (see Stewart v. Barrow, 7 Bush, 368) it is said that "a mortgage passes the legal title to real estate to the mortgagee," which follows the old doctrine.    But in all the late cases (see Taliaferro, &c., v. Gay, &c., 78 Ky., 496) the principle is announced that "substantially under the adjudications in this State, the legal title to the mortgaged premises, both at law and in equity, remains in the mortgagor during the life of the mortgage." "A mortgage is a mere security for debt, and substantially, both at law and in equity, the mortgager is the real owner of the property mortgaged." (Woolley v. Holt, 14 Bush, 790.)

In Douglass, &c., v. Cline, &c., 12 Bush, 612, it is said: "Hence mortgages are now treated in this State as mere securities, and although, strictly speaking, the mortgagee is invested with the legal title; he holds it only in pledge, and the mortgagor is considered, both at law and in equity, the real owner of the property."

It is manifest, therefore, that the Trust Company was not the real owner of six-eighths of the property in question; was not "lawfully seized in fee" thereto, and had not the good right and full power to convey the same, either by virtue of its mortgage from the Whites, or by reason of its commissioner's deed in the foreclosure proceedings aforesaid.   Nor need an eviction first be had before an action was maintainable.   This follows from the very nature of the covenants.   If ever broken, they are broken as soon as made, and an action for the breach lies at once, and before eviction.

In Fitzhugh, &c., v. Croghan *supra*, it is said : "A suit may be maintained, therefore, for a breach of a covenant of *seisin* before and without any eviction." See, also, Rawle *supra*, page 77, to the same effect.

In Warvelle on Vendors, vol. 2, p. 988, it is said : " The grantee is not bound to wait until he has been disturbed in his possession, however, but may purchase in the outstanding title, and recover from the grantor the reasonable price which he has fairly and necessarily paid for the same."

We conclude, therefore, that the South Park Residence Company had the right to institute this action against the Trust Company, the covenantor in the deed of November 17, 1888, and do so before actual eviction.

This brings us to the consideration of the question what is the measure of damages in the case ? Upon discovering the defect of title, which was in the latter part of the year 1889, the appellee, the South Park Residence Company, at once notified the Trust Company, and upon the latter company taking no steps to perfect the title, it proceeded to buy in the outstanding title of the six White heirs.

The land had greatly advanced in value, as is shown by the fact that Peddicord sold it for nearly five times as much as he paid for it, and besides extensive improvements had been erected thereon.

This title was finally bought in at the price of seven thousand two hundred dollars, paid by the South Park Residence Company, and the proof is abundant that the price paid was reasonable. Peddicord, the immediate grantor of the appellee, con-

sented to this purchase and immediately paid to
his grantee one-half of the sum it thus had to pay
to the Whites, namely, three thousand six hundred
dollars, and transferred to the appellee all interest
and claim he might have growing out of the Trust
Company's covenant to him in the deed of Novem-
ber, 1888. The latter company declining to make
good the remainder of the loss growing out of the
purchase of this outstanding title, the South Park
Residence Company brought this suit, in which
Peddicord nominally joins, against the Trust Com-
pany. It recovered a judgment for the sum claimed,
to wit, three thousand six hundred dollars, with
interest from January 25, 1890, and for five hundred
and fifty dollars for attorneys' fees and expenses in-
curred and paid, in the obtention of the outstand-
ing title of the White heirs.

In Cox's Heirs v. Strode, 2 Bibb, 273, it is said:
"The Supreme Courts of New York and of Pennsylva-
nia have determined that on a covenant of seisin
the rule of compensation is the value of the land
at the time of entering into the covenant, to be
ascertained by the consideration paid, with interest
and costs attending the eviction." This rule is un-
qualifiedly endorsed, and has since been invariably
followed. (See Cosby v. West, 2 Bibb, 568; Thomp-
son's Heirs v. Jones, 11 B. M., 365.)

In Robertson v. Lemon and Wife, 2 Bush, 301,
where there was an eviction and a suit on a breach
of general warranty, the same rule is announced,
and it was said: "The appellant is certainly liable
for the legal costs incurred in resisting the eviction,

and also for a reasonable fee paid to counsel for defending the action. * * * That the legal effect of such a warranty as that in this case is the liability of the warrantor for a restitution *pro tanto* of the consideration, is indisputably established by preponderating authority and by this court."

In Rawle, *supra*, page 992, it is said that "the doctrine is well established that where the breach of a covenant is only partial, the covenantee recovers *pro tanto* only." Warvelle, in his work on Vendors, page 1011, says that "it has been held in some instances that the allowance of a counsel fee is conditional upon the action of the covenantor, and the covenantee can not recover the fees paid by him involuntarily defending the ejectment suit as part of his damages in an action against the covenantor on the covenants of title."

Rawle, *supra*, page 310, says: "In some cases, however, counsel fees have been denied under any circumstances, it being considered that these expenses incurred by the party for his satisfaction vary so much with the character and eminence of counsel, that it would be dangerous to impose such a charge upon an opponent."

Whatever may be the rule elsewhere, we think it is authoritatively settled in Kentucky, that in suits for a breach of covenants of this character the necessary costs and expenses incurred in defending the title, including a reasonable attorney's fee, can be recovered; but we think these expenses must have been incurred in actually defending the suit for eviction, and after notice of the suit to the covenantor

If he is to be made liable, he must at least be given the opportunity to employ his own counsel and provide the defense, the cost of which he is to pay.

In this case there was no suit for eviction; the covenantee voluntarily undertook to buy in the paramount title of the Whites. Notice of the defect was first given the Trust Company in New York the latter part of November, 1889, and even then negotiations were pending between the Park Company and the Whites respecting the purchase of their claim, and was very shortly closed. The Park Company was evidently greatly alarmed at having expended some forty or fifty thousand dollars on property to only two-eighths of which they had title. It was evidence of business capacity to hurry the trade through, but we do not think the Trust Company should be held liable to this expense. It is contended by the appellant that from whatever sum is fixed the compensation due to the appellee, should be deducted the balance of the unpaid White mortgage, as in no event could they have obtained an eviction without paying this unpaid balance. This is probably true, but it does not follow that this sum should be deducted from damages incurred by the appellee. The Whites probably estimated this unpaid balance as paid or satisfied, in selling their interest at less than the market value of the property, and such view is borne out by the proof.

We conclude, therefore, that the limit of the damages recoverable in this action is six-eighths of the consideration received by the Trust Company from Peddicord on November 17, 1888, that being the pro-

poriionate loss or defect in the lands conveyed, which is three thousand dollars, with interest from the last-named date.

The judgment of the lower court being in excess. of this sum is reversed, and cause remanded, with directions to enter judgment in accordance with this opinion.