## Kentucky Nat. Park Commission v. Dennison.

Dec. 15, 1939.

Rodes & Willock and Hubert Meredith, Attorney General, for appellant.

H. W. Vincent and Roscoe Vincent for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Reversing in part and affirming in part.

Appellant, an agency created for the purpose of purchasing a large acreage in the Mammoth Cave area, was defendant below; appellee was plaintiff. We shall refer to the parties as plaintiff and defendant.

Plaintiff owned in fee a tract of land in Hart County, which, in the description in a deed, was said to contain 245 acres. Immediately adjacent to his tract was one owned by the heirs of J. W. Dennison, containing 521.84 acres, of which plaintiff, one of the heirs, owned an undivided interest. Both tracts figure in the controversy. We shall hereafter call the larger tract the "heirs' tract."

The defendant desired both tracts, and in September 1931 began negotiations with the owners, and on December 19, 1931, plaintiff executed a deed to his tract for a cash consideration of $5,817. The heirs (including plaintiff) executed deed to their tract April 30, 1934, for $7,827.60, cash.

On December 23, 1936, plaintiff began proceedings against defendant, claiming that although it had apportioned to him his interest in the sales price of the heirs'

tract, and had paid the other heirs, had not paid him his part, which he alleged to be $1,304.60.

Defendant admitted that it had in its hands $902.40, plaintiff's interest in the proceeds from the sale of the heirs' tract, the difference in amount arising from the fact that certain expenses were first paid out of the proceeds. There is no dispute as to the correctness of this amount, but defendant is holding it until adjustment of matters arising on its counterclaim and set-off.

Defendant claims that plaintiff's tract was purchased from him at "about $15.00 per acre, and $2100 for improvements, the improvements including a barn valued at $1,000," but just a few days prior to delivery of the deed and payment of the purchase price, the barn burned, and that it had no knowledge of the loss, therefore the $1,000 (value of the barn) was paid to plaintiff without consideration and by oversight and mistake. It is alleged that defendant was to have the benefit of the collected insurance.

As a counterclaim and set-off, defendant contends that at the time of the purchase of the appellee's tract, he represented that it contained 245 acres. Later it was discovered that there was a shortage of 38.84 acres, hence it is entitled to recover of him, on account of the mutual mistake, and its reliance on the warranty.

Plaintiff first denied the allegations of the answer, and then denied that he made any representation to appellant as to the quantity of land or the value of improvements, but that representatives of appellant went upon the land, made investigations, and that appellant relied upon statements made by its representatives, therefore it is estopped to make any claim upon him on account of the loss of the barn, or otherwise. He insists that, as per survey, his tract contained 245 acres, and that he had been in adverse possession to a well-marked and defined boundary, and defendant knew this when it purchased the heirs' tract which overlapped, hence the conveyance made by him was champertous and void. Section 210, Kentucky Statutes.

Plaintiff also insists that defendant was fully advised of the loss of the barn "before December 19, 1931," the date of the delivery of the deed, and that since defendant seeks to recover for shortage on plaintiff's alleged implied contract to reimburse, the cause of

action in these respects is barred by the five year statute of limitations, (Section 2515, Kentucky Statutes) they having been first set up in its responsive pleadings on May 10, 1937.

Appellant contends that there "is a dispute as to the dividing line between the two tracts," and that for this reason plaintiff is claiming that as to the 38 acre shortage, his deed for the heirs' tract is champertous and void, thus endeavoring to protect himself insofar as his tract is concerned, and should he be successful in such a plea as to his tract, he is liable as grantor in the heirs' deed for the consequent deficiency of 38 acres in the heirs' tract, and should be accountable in either event to the extent of the deficiency.

After much proof was taken, the cause was submitted on the merits and the court adjudged:

(1) Plaintiff was given judgment for $902, with interest. There is no dispute as to the correctness of amount.

(2) The plea of limitations raised by demurrer to plea of limitations, insofar as the counterclaim or set-off seeks recovery for the value of the barn, was sustained.

(3) It was adjudged that plaintiff's plea of champerty is sustained to that portion of defendant's counterclaim and set-off, wherein it sought recovery for an alleged deficiency in the conveyance of the individual tract sold by plaintiff, "since the pleadings and exhibits clearly show that defendants had full knowledge of the overlapping of the joint boundary line between plaintiff's tract, and that purchased later from the heirs, prior to and at the time of the purchase of the heirs' tract."

(4) It was further adjudged by the court that defendants failed to allege or prove that the description in the plaintiff's deed did not contain 245 acres, but rather it is admitted in the proof submitted by defendant, as well as by it alleged, that said description in said deed does in fact contain 245 acres, which is now in possession of defendants, and that they have never been evicted from any portion of the 245 acre tract by any one claiming or having paramount title to any portion of the tract, "for the above reason, the said answer, counterclaim and set-off, failed to allege or state a cause of action as against plaintiff."

(5) It was further adjudged that inasmuch as the defendants are in possession of the tract of land, and the deed embodies 245 acres, there is in reality no deficiency, and further that this grantee cannot impeach grantor's title until he has been evicted, and the defendant's answer, counterclaim and set-off were dismissed. Within the period allowed by statute, defendant prayed and was granted an appeal by this court.

We shall take up first that part of the judgment set out in paragraph No. 5, supra. In the first place it may be gathered from the whole record that the land in question was sold by the acre. It is apparent from reading the testimony that it was the endeavor of the purchasers to hold down the per acre valuations. This was readily done by taking into consideration the value of improvements on the lands. The testimony with relation to the destroyed barn is fair evidence of this fact. That the inspectors took no more than a casual glance at the barn, and estimated its value at a figure more than six times its cost is a fair example.

We think the court was in error—perhaps because of a lack of examination of the deeds—in holding that there could be no recovery for shortage, because there had been no eviction. Counsel for appellee in brief seems to take the position that the general warranty in the deed was the only one to be considered, thus excluding from consideration other, or special warranties or covenants, citing Waggener v. Howsley's Adm'r, 164 Ky. 113, 175 S. W. 4. In this case, as we read it, the court held that although a general warranty should be held to include common law covenants, still, where there is only general warranty, there should be eviction before recovery may be had. This was also the situation in Harper v. Wilson, 223 Ky. 390, 391, 3 S. W. (2d) 769, which refers approvingly to the Howsley case. But these cases do not present the situation here.

On inspection of both deeds, the one from appellee as well as the one from the heirs, they very distinctly, and no doubt with purpose, in addition to the covenant of general warranty, covenant that:

> "The party of the first part is seized of a good, indefeasible estate in fee simple to the hereinafter described land; * * * and has full power to convey said estate and that said estate is free of all encumbrances, except current taxes."

This language, (and its effect and meaning) is not mere surplusage, as is contended by appellee, and reference to some of our decisions will answer the contention made by counsel.

In Mercantile Trust Co. v. South Park Residence Co., 94 Ky. 271, 22 S. W. 314, 15 Ky. Law Rep. 70, we find that the deed contained almost the identical covenanting language. It developed later that at the time of the conveyance to an intermediate purchaser, and later to appellees, the grantors did not own all the tract described, ''hence the covenants of the first parties * * * that 'they were lawfully seised, in fee simple, * * * and that they had good right and full power to convey the same'—were broken immediately upon the making of them.'' We cited Fitzhugh v. Groghan, 2 J. J. Marsh. 429, 19 Am. Dec. 139, and some texts. We held that the South Park Company had the right to institute suit against the Trust Company, the covenantor, ''and do so before actual eviction.'' This case is cited with approval in the later case of Hope Syndicate Co. v. Southland Petroleum Co., 207 Ky. 473, 269 S. W. 517, 518.

In the latter case there was a special warranty, and it developed that there was a shortage, and in passing on the question under discussion, we said:

''It is clearly shown by the record that Miller did not own one-sixth of the land conveyed by the lease. It is also shown that he had no title to two and one-half acres of this land, which was owned by Mrs. Wilson. It is urged that, there having been no eviction, this defect of title cannot be relied on as a defense to the notes. * * * It is well settled that, to enable a vendee to recover for the breach of a general warranty of title, he must allege and prove that he has been evicted. Jones v. Jones, 87 Ky. 82, 7 S. W. 886, 9 Ky. Law Rep. 942. But a general warranty of title is defined by Section 493, Kentucky Statutes, as a covenant that the grantor would forever warrant and defend the property unto the grantee against the claims and demands of all persons, and this covenant is not broken until there has been a failure to live up to it, or until an eviction. But this rule does not apply to other covenants in a deed which have been broken. To illustrate, an action before an eviction may be maintained on the covenant that the grantor is seized of

a good title, if the title is defective. Mercantile Trust Co. v. South Park Residence Co., 94 Ky. 271, 22 S. W. 314, 15 Ky. Law Rep. 70.

"In this case the grantor covenants that it has a good right to sell and convey all of the property mentioned, and it further covenants that the lessors in the leases had title to the land conveyed by said leases at the time that they were conveyed. These express covenants were clearly broken, for the lessors did not have title to the land conveyed, and the grantor had not a good right to sell and convey the same. These covenants are inserted in the contract in addition to the general warranty, and not to give them effect would be to disregard these provisions of the contract and treat them as meaning nothing. This cannot be done. The parties must be presumed to have meant by these covenants something more than is expressed by general warranty."

It is clear from the proof that the deficiency, which admittedly existed, was in the plaintiff's tract of land. The survey of his tract was made in none too satisfactory a manner; the boundary marks were pointed out solely by appellee, and it is shown that the surveyor had little in the form of prior deeds to guide him. The surveyor does not testify. The survey of the heirs' tract was made, in a more particular way. The surveyor had before him antecedent deeds. All the heirs were present except appellee. The shortage was due to an overlap of the heirs' tract on that of plaintiff to the extent of approximately the amount of shortage claimed. It becomes unnecessary for us to discuss the question of joint and several liability, since it is clear that, though appellants might have recovered from appellee the total amount of the shortage, even though it had been found in the heirs' conveyance, as the covenant therein bound the grantors jointly and severally to make good such shortage, and the grantee could elect which to proceed against. But here we have no difficulty in concluding that the shortage arose and existed in the manner pointed out. This leads to the conclusion that appellants are entitled to a recovery for the shortage at the rate of $15 per acre.

There is no ground to support the contention that the deed of the heirs of the 38 acres is champertous,

even though at the time of the purchase and of the survey and prior thereto, the appellants had knowledge of the overlapping. If the law, as laid down in Kentucky Statutes, Section 210 is applicable to the situation presented here, the appellant would be deprived of a right to purchase an outstanding title to perfect a title theretofore purchased, though the outstanding title was purchased in part from appellee. To uphold the plea would be to allow the plaintiff to condemn his own deed of 1934, to the extent of the admitted shortage, on the ground that it was then in the adverse possession of appellants, under his own deed. He would thus establish, or attempt to do so, his title, by avoiding his last deed to the extent of the shortage, by holding the overlapping tract adversely to himself, since he must, under the statute, have had adverse possession.

As said, the proof sufficiently shows that the heirs' tract included the short acreage. One of the surveyors goes into detail, giving well-marked boundaries and corners, which show this to be the fact. Appellee's predecessors in title testify that they never owned the disputed territory. According to one witness, the land was rough, hollow, and timber land, without cultivation or fencing, and there is most assuredly lack of proof that appellee owned, or was in possession, adverse or otherwise, at the time he included it in his deed. Phillips v. American Ass'n, Inc., 259 Ky. 402, 82 S. W. (2d) 456. If any deed was champertous ( as to the 38 acres) it may well be concluded that it was that of appellee.

The court held plaintiff's plea of limitation good as to the claim set up in its answer, set-off and counterclaim as to the loss of the barn, and this portion of the judgment we are not inclined to disturb.

There is no dispute but that the deed was acknowledged on December 19, 1931, and was delivered and recorded a few days later. The check was dated December 14, but was not turned over until the delivery of the deed. There is no exact proof as to just when the barn burned, but it seems to be conceded that it was prior to the delivery of the deed, and the payment of the purchase price. Appellee claims, and it is not disputed, that the day following the burning of the barn he went to Mammoth Cave, where Demumbrun lived and reported the loss to him. Demumbrun, who was the one who opened and carried on to some extent, negotiations between grantor and grantee, does not testify.

Appellee admits that he did not report the loss to the attorney of the Commission when he delivered the deed and accepted his check. Demumbrun was not a member of the Commission, but was described as one of the "land buyers," but without authority to close a trade. Appellee testified that he notified Demumbrun, because he was land buyer for the Commission, and was the man with whom he made the trade. At the time of the loss of the barn, the headquarters of appellant was in Louisville. Iglehart, who finally recommended to the appellant the basis for the closing of the trade, and made his inspection of the premises, says there was no conversation between appellee and the inspector. It therefore appears to us that appellee reported to about the only persons he could at the time, who had any connection with the transaction. Demumbrun had been very active in the effort to acquire the Cave area.

There is nothing to indicate that appellee concealed, or undertook to conceal the fact that the barn had burned. It appears in the proof that Mr. Coleman was an accredited abstractor for the appellant. He was the one who examined the title, perhaps prepared the deed, and paid appellee upon its delivery. Appellant seems to conclude that if appellee had told Coleman of the loss, all might have been well and good. Of course, it might have delayed the closing of the transaction, but notice to him would have been no more notice, or as much, insofar as appellant was concerned, than notice to Demumbrun, who apparently was clothed with enough authority to justify appellee in the belief that notice to him would be carrier to appellant. The fact of the matter is, that when Demumbrun was notified he treated the matter as of very little importance, insofar as it might affect the trade.

In proof it was shown that the first admitted notice of the loss was on February 2, 1932. Appellant theretofore argues that its petition filed on December 23, 1936, was in time to defeat any plea of limitations. If the notice to Demumbrun prior to December 19, 1931, was sufficient, the action is barred. In this connection it is noted in an amendment to plaintiff's reply, he alleged specifically that appellant was fully advised prior to, or on December 19, that the loss had occurred, and this allegation was not denied. We are of the opinion that the court correctly held that the statute of limitations applied as to the claim for loss of the barn.

Aside from what has been said, and after reading the proof closely, we are inclined to the opinion that neither the purchasing authorities, nor the Commission had the notion at any time that the loss of the barn was a serious blow, nor that appellant had suffered any loss. This may be gathered from the fact that appellee, shortly after the loss of the barn, collected more than its value from the insurance company, a fact known to appellant as early as February, 1932, and never, until its suit was filed, approached appellee on the subject. Not even when settlement was made for the heirs' tract in 1934, and at which time Demumbrun was a member of the Commission.

Having concluded as above indicated, we are of the opinion that appellants are entitled to deduct from the amount admitted to be due appellee, the value of 38.8 acres at the price of $15 per acre, (admitted in briefs) but should not deduct any sum on account of the loss of the barn.

Judgment reversed in part and affirmed in part, with directions to enter one in conformity with this opinion; the costs to be paid in equal proportions by each party.