Daniel D. STEWART, Jr., Betsy R. Stewart, Mary Deronda Stewart Rieke, James C. Rieke and William Stewart, Appellants,

v.

Delma SIDDENS, Freda Siddens, Big Branch Land & Mineral Company, Inc., Robert Henry Ivey, Charlotte Ivey, Emolyne S. Churchill, Richard Gerrish III, Susan Ivey, Terry Ivey, Lorraine Risen, Plastics Universal Corporation, Ada Mining Corporation and Adams Resources & Energy, Inc., Appellees.

PLASTICS UNIVERSAL CORPORATION, Ada Mining Corporation and Adams Resources & Energy, Inc., Appellants,

v.

Delma SIDDENS, Freda Siddens, Big Branch Land & Mineral Company, Inc., Robert Henry Ivey, Charlotte Ivey, Emolyne S. Churchill, Richard Gerrish III, Susan Ivey, Terry Ivey, Lorraine Risen, Daniel D. Stewart, Jr., Betsy R. Stewart, Mary Deronda Stewart Rieke, James C. Rieke and William Stewart, Appellees.

Court of Appeals of Kentucky.

Nov. 9, 1984.

Discretionary Review Denied and Opinion Ordered Published by Supreme Court April 24, 1985.

C. Kilmer Combs, Wyatt, Tarrant & Combs, Lexington, for Daniel D. Stewart, Jr., Betsy R. Stewart, Mary Deronda Stewart Rieke, James C. Rieke and William Stewart.

Gordon W. Moss, Hays & Moss, Lexington, for Plastic Universal Corp., Ada Mining Corp., and Adams Resources & Energy, Inc.

Carl R. Clontz, Clontz & Cox, Mount Vernon, for Delma Siddens, Freda Siddens, and Big Branch Land & Mineral Co., Inc.

D.H. Robinson, Louisville, for Robert Henry Ivey, Charlotte Ivey, Emolyne S. Churchill, Richard Gerrish, III, Susan Ivey, Terry Ivey, and Lorraine Risen.

Before COMBS, GUDGEL and HOWERTON, JJ.

COMBS, Judge.

This appeal concerns ownership of a tract of real property in Knox County.

Flem D. Sampson acquired a large amount of realty in Knox, Clay and Laurel counties. Prior to his wife's death, he conveyed 157 separate tracts of land to a Trustee who conveyed the same land to Sampson and his wife. When his wife died, Sampson acquired a one-third interest for life, and the Sampson children acquired the remainder, as well as two-thirds fee simple interest in Mrs. Sampson's realty.

In 1963 at the age of 90 years, Sampson conveyed to D.D. Stewart 157 separately described tracts referring to the deed from the Trustee as his source of title. Following the descriptions and the source of title, but before the habendum clause, the deed contained the following provision:

> It is agreed by and between the parties hereto that this conveyance is intended to cover all the real estate which F.D. Sampson now owns in Knox, Clay and Laurel Counties, Kentucky with the exception of approximately 300 acres, more or less, around the F.D. Sampson home on Sampson Hill near Barbourville, Knox County, Kentucky, and if any tract of land has been left out of this conveyance—by mistake or inadvertency—the party of the first part agrees to execute a separate conveyance to the party of the second part herein covering such lands at no additional costs to the parties of the second part herein.

About eleven months after Sampson made this conveyance, he was declared incompetent and his daughter was appointed as his committee. The committee filed suit to have the deed to Stewart set aside on grounds of lack of mental capacity and undue influence. Stewart answered, gen-

erally denying the allegations of the complaint and did not file a counterclaim. The suit was dismissed as settled.

The settlement agreement provided that the Sampson children would convey their inherited interests in the 157 tracts to Stewart; that Stewart would pay to the committee the amount he agreed to pay to Sampson; and Sampson's liability under the general warranty would be limited to $2.00 an acre.

Fourteen years later, the Stewart heirs leased coal on property Sampson owned when he conveyed to Stewart, but was not specifically described in the deed. Suit was filed to determine title. On motions for summary judgment, the Knox Circuit Court held that Sampson had conveyed this property through the provision quoted above, but that the settlement agreement acted as a deed from Stewart to convey the undescribed property to Sampson and his heirs.

On appeal, this Court affirmed the trial court's interpretation of the Sampson deed, but reversed as to the effect the trial court gave the settlement agreement. The relevant portion of that opinion is as follows:

As to the court's holding with respect to the settlement agreement, we believe that summary judgment was improperly granted. The appellants correctly argue that the agreement, which fails to name a grantee, to describe property to be conveyed or to manifest a present intent to make a conveyance is not itself a deed. On the other hand, it is well settled in our law that the doctrine of equitable estoppel extends to real estate as well as personal estate. The agreement may be evidence supporting a reasonable inference that Mr. Stewart intended thereby to relinquish any claim to land other than the 157 tracts or of his agreement that the deed was intended to convey only those tracts. But this is only one reasonable inference which could be drawn from the undisputed facts in the record. Another is that the agreement and second deed had as their sole purpose the limiting of Mr. Sampson's liability on his warranty. Where conflicting reasonable inferences may be drawn from undisputed facts, summary judgment is not proper. [citations omitted].

On remand the circuit court adjudged the Sampson heirs owners of the property in dispute under the following conclusion of law:

The Court of Appeals has given guidance to this Court by outlining the reasonable inferences that may be drawn from this record:

1. Stewart intended to relinquish any claim to land other than the 157 Tracts, or

2. Stewart agreed that the deed was intended to convey only 157 Tracts, or

3. The sole purpose of the agreement and deed was to limit Sampson's liability on the covenant of general warranty.

The Court concludes that taking into consideration the totality of the circumstances, the effects of the uncontradicted writings, the benefits bestowed on the Stewarts of full ownership and good title to the 157 Tracts point to inferences one and two of the three outlined by the Court of Appeals as being the more reasonable.

We agree with the trial court that Stewart agreed either to relinquish any claim to lands other than the 157 tracts or that the deed only conveyed the 157 tracts. The agreement at issue, entitled Agreement of Compromise and Settlement, was the basis of the dismissal of the committee's action to set aside the Sampson deed. The only issue in that action was whether Stewart had any valid interest in any land owned by Sampson. There was no counterclaim and no other issue was raised by the pleadings.

At best, Stewart had only one-half interest in the 157 tracts and had he counterclaimed for Sampson's breach of warranty, he would have remained obligated to pay about one-half of the purchase price. *Mercantile Trust Co. v. South Park Residence Co.,* 94 Ky. 271, 22 S.W. 314 (1893); *Haas v. Gahlinger,* Ky., 248 S.W.2d 349 (1952). On the other hand, the Sampson children had no obligation whatsoever to Stewart.

If the appellants' contentions are correct, the Sampson children conveyed their one-half interest in the 157 tracts for no consideration. Stewart was obligated to pay the amount he agreed to pay under the agreement. He did not agree to pay the Sampson children, but Sampson's committee. There was no counterclaim or other issue raised that would have imposed liability on Sampson. Further, the warranty provisions did not necessarily limit Sampson's liability. If the acreage is as the appellees suggest, Sampson's potential liability would be greater than the purchase price. Normally the purchase price is the limit of the warrantor's liability. *Haas, supra.*

The inference that Stewart had agreed not to claim lands not specifically described by the deed is supported by comparing the language of the committee's complaint and that used in the agreement. The complaint reads, in part, as follows:

> ... D.D. Stewart procured from Flem D. Sampson a deed dated November 2, 1963, wherein the said Flem D. Sampson purported to convey to said defendant vast boundaries of land which included all of the real estate owned by Flem D. Sampson throughout various counties in southeastern Kentucky, including Clay County, and excepting only a tract of land near Barbourville, Knox County, Kentucky, whereon the home and residence of Flem D. Sampson was located.

The agreement reads, in part, as follows:

> Whereas, by deed dated November 2, 1963, Flem D. Sampson conveyed to D.D. Stewart some one hundred fifty-seven (157) tracts of land (or mineral rights, called land) ...

There is a clear inference that in settling the claim of the committee, the parties agreed that the deed conveyed the tracts specifically described rather than all of Sampson's property in the three counties except his home.

▆▆▆ A person is estopped from questioning the existence or effect of a contract when he has asserted its existence to his benefit or the other party's detriment. 17 Am.Jur.2d *Contracts* § 9 (1964). Samp-

son's Committee and his children have forsaken any claim they had to the 157 tracts of land. Stewart, rather than risking any title, has a clear title to the 157 tracts. Those in privity with Stewart, his heirs and their assigns, having received benefit from his contract to the detriment of Sampson and his heirs may not now deny the effect of his agreement.

We think it would be worthwhile for the trial court's Master Commissioner to execute a deed to the rightful owners of all known property that Mr. Sampson owned, which was not specifically described in his deed to Stewart.

The judgment of the Knox Circuit Court is affirmed.

HOWERTON, J., concurs.

GUDGEL, J., dissents.

GUDGEL, Judge, dissenting:

I respectfully dissent. A reading of this court's previous opinion clearly establishes that it was not intended to finally adjudge both issues addressed in that appeal. Only one issue was finally determined, *i.e.* that the deed from Sampson to Stewart conveyed Mr. Sampson's interest in *all* of his real estate in Knox, Clay, and Laurel Counties except 300 acres known as Sampson Hill to Mr. Stewart. The remainder of the trial court's summary judgment was reversed. This court did indicate, however, that the defense of equitable estoppel might apply to this case, and that the settlement agreement between Stewart and the Sampson heirs was evidence which bore on the issue. Significantly, though, our opinion did not state that the settlement agreement, standing alone, was sufficient evidence to prove the defense.

As with any affirmative defense appellees had the burden of proof on the issue of equitable estoppel. Unfortunately on remand no further proof was adduced by either side. At the time the court entered a final judgment on the merits, therefore, the only evidence before it which bore on the issue of appellees' defense of equitable

estoppel was the settlement agreement. In my opinion that agreement, standing alone, was insufficient as a matter of law to meet appellees' burden to prove their defense of equitable estoppel.

Accordingly, I would reverse the court's judgment with directions that it enter a judgment in favor of the appellants in both appeals.