**SCHECK MECHANICAL CORPORATION,**
Plaintiff,

v.

**BORDEN, INC., Defendant.**

No. CIV.A.3:97CV–793–S.

United States District Court,
W.D. Kentucky,
Louisville Division.

Jan. 9, 2001.

Carol D. Browning, David B. Ratterman, Stites & Harbison, Louisville, KY, for plaintiff.

John W. Bilby, Charles Gibson Middleton, III, Nancy J. Schook, Jason P. Under-

wood, Middleton & Reutlinger, Louisville, KY, for defendant.

### MEMORANDUM OPINION

SIMPSON, Chief Judge.

This matter is before the Court on each party's motion for summary judgment. The Plaintiff, Scheck Mechanical Corporation ("Scheck"), moves for summary judgment on the issues of whether the Defendant breached the contract between the parties and whether the Defendant committed fraud, intentional and negligent misrepresentation, and fraudulent concealment. The Defendant, Borden, Inc. ("Borden"), moves for summary judgment on Scheck's Complaint and on Count III of its counter-claim. For the reasons set forth below, we will grant Scheck's motion with respect to its claim for breach of the construction schedule and will grant Borden's motion with respect to Scheck's claims for suspension of the contract, and for cardinal change and abandonment. We will deny the remaining portions of both parties' motions.

### BACKGROUND FACTS

The following facts are undisputed.

This case arises out of a construction contract between the parties. Borden planned construction of a Urethane Resole Facility at its Jefferson County plant, (the "U/R Project"). Part of the U/R Project included several major runs of piping carried in multiple levels. For this portion of the construction, Borden sought out a mechanical piping contractor.

Scheck was a mechanical piping contractor which had experience in projects similar to the U/R Project and which had a positive history with Borden. After bidding and intense negotiation on several points, Scheck and Borden entered into a contract on November 28, 1995. The contract established that Scheck's work was scheduled to be completed on April 15, 1996. It also included a liquidated damage clause which required Scheck to pay Borden $2000 for each day that it was late in meeting the completion date. The contract bound Borden to increase the amount it paid to Scheck if Scheck did any additional work on the project or if it incurred any costs related to the suspension of work.

Scheck mobilized on the work site on December 12, 1995 to begin its contractual duties. However, due to several complications—the extent and cause of which are at issue in the present motions—it did not complete the project by the April 15, 1996 deadline. Instead, Scheck workers remained on the site until sometime after July of 1996.

It addition, during its time at the work site, Scheck completed several projects for Borden which were in addition to the projects outlined in the contract. Scheck billed Borden for at least five of these projects, and Borden paid those bills in full. Borden now claims that it was overcharged.

### DISCUSSION

In order to support a motion for summary judgment, a moving party must prove the absence of a genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In deciding a summary judgment motion, a judge's role is not to weigh the evidence or determine its truth, but to determine if a genuine question of fact exists. *Id.* at 249, 106 S.Ct. 2505. In

making these determinations, the court is to view all facts and inferences in a light most favorable to the nonmoving party. *White v. Turfway Park Racing Ass'n, Inc.,* 909 F.2d 941 (6th Cir.1990).

In this case, both parties have moved for summary judgment, and those motions overlap in significant ways. Thus, for much of the evidence, we must view it in the light most favorable to Borden in respect to Scheck's motion and in the light most favorable to Scheck in respect to Borden's motion.

### Breach of Contract

Scheck claims that there is no genuine factual dispute which would allow Borden to argue that it did not breach the contract. It argues that further proceedings should be limited to determining the amount of damages it suffered as a result of this breach. Borden, on the other hand, claims that there is no genuine factual dispute as to whether Borden breached the contract and that this claim should be dismissed.

Scheck argues that the contract was breached in three ways: (1) Borden failed to follow the required construction schedule, (2) Borden provided defective isometric engineering drawings, and (3) Borden, effectively, suspended Scheck's work under the contract. Scheck alleges that these breaches caused numerous inefficiencies and increased its costs on the project. Borden denies these claims and also argues that Scheck cannot establish damages. We will consider each of these points in turn.

### 1. *Construction Schedule*

Scheck argues that Borden breached the contract by failing to follow the incorporated construction schedule. It claims that Borden failed to complete necessary precedent work in order to allow Scheck to begin piping on the dates indicated. Scheck acknowledges that there are several factual questions as to the amount of damages it suffered. However, it argues that there is no question that Borden is liable to it for breaching the contract. Borden also argues that there is no genuine issue of material fact but claims that the undisputable facts establish that it did not breach the contract.

On October 13, 1995, VITOK Engineers, Inc.("VITOK"), one of Borden's subcontractors, produced a memorandum of the minutes of a meeting conducted by Borden on August 18, 1995 for all companies interested in bidding on Borden's piping work. At the end of this memorandum, VITOK listed a number of questions submitted by the potential piping subcontractors and answered those questions. Question six requested an equipment installation and pipe rack schedule. The answer provided, "November 20, 1995 Piping in the reactor building can start. November 27, 1995 Piping on the main pipe rack can start. December 18, 1995 Piping in the raw materials tank farm, indoor/outdoor finished goods tank farms, warehouse and pipe racks can start." (Scheck Motion Summ. J., Ex 3.)

On October 18, 1995, VITOK released another memorandum which amended some of the information provided at the August 18 meeting and recounted in the October 13 memorandum. This memorandum cites the four page October 13 memorandum as a "Reference." *Id.* The "specifications" contained in this October 18 memorandum were expressly incorporated into the contract in ¶ 1.2.1. (Borden's Resp. Summ. J., Ex. 1.) Thus, Scheck argues that the dates listed in the October 13 memorandum became a part of the contract between the parties. Borden, on the other hand, argues that this reference was not sufficient to make these dates mandatory.

In general, the construction and interpretation of a written instrument are

questions of law for the court to decide. *Cinelli v. Ward,* 997 S.W.2d 474, 476 (Ky. App.1998). We find that the October 13 Memorandum unambiguously details the dates upon which certain portions of the piping work can begin.

The reference to the October 13 memorandum in the October 18 memorandum is, likewise, unambiguous. Although it might have been stated more clearly, we find that this reference can have no other meaning than to incorporate the October 13 memorandum in its entirety. The October 18 memorandum makes little or no sense outside of the context of the information provided in the October 13 memorandum, and Borden has articulated no other explanation for this reference.

Finally, the incorporation of the October 18 memorandum into the contract is unambiguous. "Specifications," given its ordinary meaning, includes dates and schedules. This is especially true when the contract provides that time is of the essence and contains an ending date and liquidated damages clause. Therefore, Borden was contractually bound to meet the dates contained in the October 13 memorandum.

Borden admits that the reactor building was not ready for piping until at least December, 1995. (Borden's Motion Summ. J., at 13). The contract provided that the reactor building would be ready for piping on November 20, 1995. Likewise, Borden admits that the main pipe rack was not ready for pipe installation until January 27, 1996. *Id.* at 12. The contract required this to be ready by November 27, 1995. In its previously filed motion for summary judgment, Borden admitted that the indoor/outdoor finished goods tank farm was not ready to accept piping until March, 1996, (Borden's Aug. 2, 1999 Motion Summ. J., at 13), and it has not attempted to correct this admission in its present motion, response, or reply. By contract,

the finished goods tank farm was to be ready for piping by December 18, 1995. Also, Borden has admitted that the warehouse was not erected until February, 1996. *Id.* at 16. Borden has argued in its present briefs that Scheck's actions contributed to the delay in finishing the warehouse. (Borden's Rep. Motion Summ. J., at 4). However, it has failed to argue or provide sufficient evidence to create a genuine dispute that Scheck had any responsibility in preventing it from having the warehouse ready by December 18, 1995, as it was contractually obligated to do. This is especially true in light of the fact that Scheck did not mobilize until December 12.

■ Because of Borden's admissions, there is no genuine issue of material fact as to whether Borden breached these portions of the contract. Scheck is entitled to a judgment as a matter of law on this portion of its claim. A genuine factual dispute remains as to whether Borden prepared the raw materials tank farm and the pipe racks for piping before December 18 as stated in the contract. Also, many factual issues as to the extent of Scheck's damages remain to be resolved.

■ Borden's argument that Scheck cannot recover for breach because it did not submit a revised plan and plan of recovery to Borden is unavailing. Although it may have required Scheck to do so, the contract makes clear that this duty relates only to the liquidated damages clause which was waved. It cannot be read to protect Borden from liability when it commits a breach of the contract.

Borden's argument that Scheck cannot establish damages is also unavailing. Scheck has presented substantial evidence that it was harmed by Borden's alleged breaches even though the extent of that damage may not be easily determinable.

## 2. *Isometric Drawings*

Under the contract, Borden was required to provide isometric drawings ("ISO's") to Scheck so that Scheck could have its subcontractor manufacture the pipe and so that it could "field, fit, and verify" the pipe measurements. Scheck contends that Borden breached this part of the contract (1) because Borden, and its subcontractor, did not provide the ISO's in a timely manner and (2) because they were inadequate once produced. Borden argues that neither of these contentions is true.

### a. Timeliness

■ In respect to Scheck's first claim, it is unclear to the Court when Borden was contractually bound to furnish the ISO's to Scheck. According to the October 18, 1995 memorandum, Borden was to complete the ISO's by October 31, 1995. (Scheck's Motion Summ. J., Ex. 3). However, the parties do not stress the importance of this date in their briefs, and because the contract was not executed until nearly a month after this date, the extent to which it binds Borden is unclear. Even if we were to determine that the contract made this date mandatory, we would still require Scheck to establish that the date was material to the contract and to Scheck's performance.

■ On the other hand, even if the contract does not bind Borden to furnish the ISO's by this date, it is still possible that Borden breached this portion of the contract. When a contract is silent on an essential term, a court must apply a rule of construction to give the document meaning as a whole. *Morganfield Nat. Bank v. Damien Elder & Sons*, 836 S.W.2d 893, 895 (Ky.1992). The ISO's were essential for the fabrication of piping, and the piping, of course, cannot be installed until it is fabricated. Therefore, the contract required Borden to produce the ISO's in time to permit Scheck a reasonable amount of time to fabricate and install

them before the April 15, 1996 deadline. Because we have not been furnished sufficient evidence to determine what a reasonable amount of time would have been, we are not prepared to grant summary judgment on this issue at this time.

### b. Adequacy

■ Scheck has produced evidence that VITOK admits the ISO's were "sub-standard." (Scheck Resp. Summ. J., Ex. 2). However, this is not sufficient to carry its burden on a motion for summary judgment. This question may be a matter of opinion, and unless one opinion is inadmissible due to a rule of law or evidence, it may remain a matter of opinion to be resolved by a jury. Therefore, we are not prepared to grant summary judgment on the question of whether the ISO's were insufficient.

## 3. *Suspension of the Contract*

The contract between Scheck and Borden provided, "Owner [Borden] may suspend operations under this Contract.... Costs related to suspending the Work shall be added to the Contract Price. In addition, the Contract Price shall be adjusted for any escalation or other increase in cost resulting from the suspension." (Borden's Summ. J., Ex. 1, ¶ 12.3.) This provision allowed Borden to suspend the contract if necessary without releasing Scheck from its obligations but required it to pay Scheck for any costs incurred by the suspension.

■ It is undisputed that Borden never officially suspended work on the contract. However, Scheck claims that Borden triggered this contract provision by suspending the contract, de facto, through its failure to complete precedent work and to allow Scheck to complete its work under the contract. Scheck argues that we have the authority to consider "that done which

ought to have been done" and to characterize "the circumstances as a constructive (or de facto) suspension." *Merritt–Chapman & Scott Corporation v. United States*, 192 Ct.Cl. 848, 429 F.2d 431, 443 (1970).

*Merritt–Chapman*, however, is distinguishable from the case at hand. In that case, the plaintiff had no other remedy for the costs it incurred dealing with the substantial delay because it was not caused by either party. In this case, however, the factual allegations which Scheck claims establish a de facto suspension are the same ones which it claims prove that Borden breached the contract. The contract was allegedly delayed through Borden's alleged failures to follow the construction schedule, to produce ISO's in a timely manner, and to allow Scheck to complete its portions of the contract. These allegations, if true, form the basis of Scheck's breach of contract claims. Thus, Scheck cannot prove de facto suspension without proving breach and cannot, by proving de facto suspension, entitle itself to any additional remedies or damages.

Therefore, we find that there is no merit in recognizing a separate cause of action for de facto suspension. Because Scheck admits that Borden did not officially suspend the contract, we find that there is no genuine issue of material fact on this claim and that Borden is entitled to judgment as a matter of law.

### 4. *Remaining Claims of Breach*

In Scheck's complaint and motion for summary judgment, it discusses several other details, such as its movement of piping around the construction site and its inability to work inside on cold weather days. It is unclear to us whether Scheck's theory is that these equate to separate breaches of contract or whether it alleges that they are examples of the damages caused by the previously discussed breaches.

■ A basic tenet of construction law is that:

> In the event of an owner caused delay or in the event that the owner is responsible for extra work, the contractor may be entitled, by contract, to ... the increased costs incurred by the contractor as a result of extending his performance over a greater period of time.

Steven G.M. Stein, *Construction Law*, ¶ 11.02 at 11–19 (Matthew Bender, June 2000). Therefore, if Scheck can establish that Borden caused additional delays, Scheck may be entitled to its increased costs as damages. However, there are genuine disputes as to a number of issues such as the number of times Scheck was required to move the pipe and the extent to which each party is responsible for the delays. Thus, neither party is entitled to a summary judgment.

### *Fraud*

Scheck claims that it is entitled to summary judgment on the issue of whether Borden is liable for fraud, fraudulent concealment, and intentional and negligent misrepresentation during contract negotiations and, subsequently, when Borden representatives allegedly told Scheck that the precedent work would be completed shortly. Conversely, Borden argues that it is entitled to summary judgment on this issue because (1) Scheck has failed to plead sufficient facts to state a claim for fraud under Fed.R.Civ.P. 9(b), and (2) Scheck should have been aware of the fact that Borden was behind schedule during contract negotiations and when it mobilized on the construction site.

### 1. *Federal Rule of Civil Procedure 9(b)*

■ Federal Rule of Civil Procedure 9(b) requires that in "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." The Sixth Circuit re-

quires the plaintiff to allege, at a minimum, "the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Coffey v. Foamex, L.P.*, 2 F.3d 157, 161–62 (6th Cir.1993)(quoting *Ballan v. Upjohn Co.*, 814 F.Supp. 1375, 1385 (W.D.Mich. 1992)).

 Scheck has satisfied Fed.R.Civ.P. 9(b). It alleges that Borden misrepresented the fact that the project could be completed by April 15, 1996 during the contract negotiations even though it knew that that date was unobtainable because of its decision to galvanize the steel. Next, Scheck alleges that Borden made this representation in order to induce Scheck into making expensive preparations to complete the work by April 15, 1996. Also, Scheck alleges that it was harmed by spending excessive funds attempting to meet the April 15, 1996 date. Thus, Borden has ample notice of the fraud in order to respond appropriately.

### 2. *Fraud and Intentional Misrepresentation*

 In order to recover for intentional misrepresentation a plaintiff must establish (1) that the defendant made a false statement or concealed the truth; (2) about a material fact; (3) that the defendant knew his statement was not true; (4) that the defendant intended to deceive the plaintiff; (5) that the plaintiff relied on the deception; and (6) damages resulting from the deception. *Kentucky Laborers Dist. Council Health and Welfare Trust Fund v. Hill & Knowlton, Inc.*, 24 F.Supp.2d 755, 771 (W.D.Ky.1998).

Scheck has alleged that Borden committed fraud when it represented that its work could be completed by April 15, 1996 even though they had information which would make this date unachievable. Be-

cause this representation was contained in the contract, there is at least a genuine dispute as to whether Borden made a material representation which they intended Scheck to rely upon and which Scheck reasonably relied upon to its detriment.

 The crucial issues for this motion, then, are whether that representation was false when it was made and whether Borden knew that it was false. The evidence on record which could support these claims consists of several things. Scheck offers a Borden interoffice memo stating that the decision to galvanize the steel would add a two to three week delay to its arrival, (Scheck Summ.J., Ex. 14), and deposition testimony that Borden probably knew that the decision to galvanize would delay the delivery four to six weeks, (Scheck Summ. J., Ex. 17, David Scott ("Scott") Depo. at 151–52). Also, there is evidence that this decision was made sometime in October, before the contract was negotiated and executed. *Id.* at 150–51. A reasonable jury, viewing this evidence in the light most favorable to Scheck, could find that Borden knew that its decision to galvanize the steel would delay its delivery by up to six weeks and that, from this, Borden knew that it would not be able to satisfy the contractual construction schedule. Thus, the jury could infer that Borden knew that Scheck could not meet the April 15, 1996 completion date. However, a reasonable jury could also decide not to draw these inferences. Therefore, neither party is entitled to a summary judgment on this claim.

### 3. *Fraudulent Concealment*

 In order to establish a claim of fraudulent concealment, Scheck must be able to prove (1) that Borden had a duty to disclose a material fact, (2) that Borden failed to disclose that fact, (3) that Borden's failure induced Scheck to act, and (4)

that Scheck was injured as a result. *Smith v. General Motors Corp.*, 979 S.W.2d 127, 129 (Ky.App., 1998). The first element may be satisfied where "one party to a contract has superior knowledge as is relied upon to disclose same." *Id.* Thus, Scheck has submitted sufficient evidence to create a genuine issue as to whether Borden fraudulently concealed the fact that there would be a significant delay in the arrival of the galvanized steel and as to whether that fact was material to Scheck. Therefore, neither party is entitled to a summary judgment on this claim.

#### 4. *Negligent Misrepresentation*

The Restatement (Second) of Torts § 552 provides:

> (1) One who, in the course of his business ... supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care ... in obtaining or communicating the information.

We have recognized that, based upon Kentucky's general adoption of the Restatement in other tort situations, Kentucky would recognize this standard for negligent misrepresentation. *Goldman Services Mechanical Contracting v. Citizens Bank & Trust Company of Paducah*, 812 F.Supp. 738, 742 (W.D.Ky.1992). For the same reasons and based upon the same evidence in the discussion above, there is a genuine issue of material fact as to whether Borden negligently misrepresented the facts regarding the galvanized steel and the completion date. Therefore, neither party is entitled to summary judgment.

### *Cardinal Change and Abandonment*

In Count I of its Complaint, Scheck alleged that it is entitled to relief under the theories of cardinal change and abandonment. Scheck's motion does not request summary judgment as to this portion of its complaint. However, in Borden's motion, Borden contends that there is no genuine issue of material fact on these claims and that it is entitled to judgment as a matter of law. Thus, we must address whether, in viewing the evidence in the light most favorable to Scheck, there is sufficient evidence to demonstrate that there is a genuine issue of material fact on each element of these theories.

#### 1. *Cardinal Change*

The theory of cardinal change is based upon the notion that "because of the owner's ... material breach, the contractor is entitled to rescind the contract." *L.K. Comstock & Co., Inc. v. Becon Constr. Co., Inc.*, 932 F.Supp. 906, 945 (E.D.Ky. 1993). In its response to Borden's motion for summary judgment, Scheck argues in great detail that there is substantial evidence of a material breach by Borden. However, it fails to articulate any evidence which could establish that it rescinded the contract. In fact, Borden has pointed to the fact that Scheck has, on several occasions, asserted its rights under the contract after the alleged material breaches. Scheck does not deny that it has recovered for some of its increased costs by submitting purchase orders to Borden pursuant to the procedure outlined in the contract. Therefore, we find that there is no genuine dispute as to whether Scheck rescinded the contract and that Borden is entitled to a judgment on this issue as a matter of law.

Even if the facts about rescission were in dispute, we would still find that Borden would be entitled to summary judgment on this portion of Scheck's complaint under the equitable doctrine of estoppel. Under Kentucky law, a party is "estopped from questioning the existence or effect of a contract when he has assert-

ed its existence to his benefit or the other party's detriment." *Stewart v. Siddens,* 687 S.W.2d 536, 539 (Ky.App.1984). There is no dispute that Scheck has asserted the existence of the contract to its own benefit. It may not now claim to have rescinded the contract in order to seek restitutionary damages.

### 2. *Abandonment*

■ Abandonment is an appropriate remedy "if the original plan for the work had been so entirely abandoned, that the contract could not be traced and applied to any particular part of the work performed...." *L.K. Comstock & Co., Inc. v. Becon Const. Co., Inc.,* 932 F.Supp. 906, 933 (E.D.Ky.1993). Additionally, "the proof must be clear and convincing to sustain a finding that the contract has been abandoned." *Id.*

■ In arguing that an abandonment exists, Scheck only points to the alleged fact that it was substantially delayed by Borden. However, it does not argue that the work it did was significantly different than the work which was contemplated under the contract or that the work it did is not traceable to or redressable by the terms of the contract. In fact, the evidence produced indicates, to the contrary, that the work performed by Scheck was identical to the work contemplated under the contract. Also, any damages caused by Borden's alleged actions or failures to act are redressable through relation to the contract. Thus, in light of the heavy burden the law places on Scheck, we find that there is not sufficient evidence to create a genuine dispute about these issues. Therefore, Borden is entitled to a judgment as a matter of law on Scheck's claim of abandonment.

### *Accord and Satisfaction*

Borden claims that Scheck's Complaint should be dismissed because there has been an accord and satisfaction. Borden has presented no evidence that Scheck accepted any payment in full satisfaction of the debt owed to it by Borden. Although it may be true that Borden has fully compensated Scheck for the extra work it performed, there are clearly genuine issues of fact which must be resolved first.

### *Borden's Counter-Claim*

Borden claims that there is no genuine issue of material fact as to Count III of its counter-claim and that it is, therefore, entitled to a judgment as a matter of law. In Count III, Borden alleges that Scheck overcharged it on five additional projects completed during the duration of the project by charging above invoice cost for labor and by charging for overhead. Scheck denies these allegations but has not argued that it is entitled to summary judgment on this issue.

■ In support of its claim, Borden submits the affidavit of Kevin R. Field ("Field"), whom it claims is an expert. In preparation for his affidavit, Field reviewed Cost Summary Breakdowns from Scheck. After analyzing these Breakdowns, Field affirms, "it appears Scheck over billed Borden ... by at least a total of $155,181.54." (Borden Summ. J., Ex. H, ¶ 5.) However, Field's opinion does not consider the labor rates allegedly agreed to between the parties.[1]

Both parties agree that the they had a time and material contract which permitted Scheck, in relation to its labor costs, to bill Borden for an additional fifteen percent over its base rate. Borden claims, however, that the base rate was to be Scheck's cost for labor, and Scheck argues

---

**1.** In fact, he indicates that the rates he used were "less than the rates indicated in Scheck's letter to Borden dated 5/13/96...." (Borden Summ. J., Ex. A of Ex. H.)

that the base rates were the ones referred to in two letters written by Scheck to Borden on May 13, 1996. (Borden Summ. J., Exs. F, G.) Borden has not cited to any contractual language which could be read to set Scheck's billing rate at the cost of its labor plus fifteen percent. Because the burden for this motion is on Borden, it is not entitled to summary judgment on this claim.

### CONCLUSION

For the reasons stated above, we find that Scheck is entitled to summary judgment on the issue of whether Borden is liable for breaching the construction schedule contained in the contract. Therefore, we will grant Scheck's motion as to this issue by a separate order entered this date. Also, we find that Borden is entitled to summary judgment on Scheck's claims for contract suspension, cardinal change and abandonment and will grant Borden's motion to this extent by the same order. In all other respects, we find that there are genuine issues of material fact and that the remaining portions of both parties' motions should be denied.

### ORDER

For the reasons set forth in the memorandum opinion entered this date and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that Scheck's motion for summary judgment is **GRANTED in part** to the extent that it requests that we find Borden liable for breaching the construction schedule. The remaining portions of Scheck's motion are hereby **DENIED.**

For the reasons set forth in the memorandum opinion entered this date and the Court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that Borden's motion for summary judgment is **GRANTED in part** to the extent that it requests summary judgment on Scheck's claims for suspension of

contract, cardinal change, and abandonment. These claims are **DISMISSED** with prejudice. The remaining portions of Borden's motion are hereby **DENIED.**