David MOORE, Appellant,

v.

COMMONWEALTH OF KENTUCKY, Corrections Cabinet and Board of Claims, Appellees.

No. 91–CA–807–MR.

Court of Appeals of Kentucky.

June 26, 1992.

Withdrawn and Reissued Aug. 28, 1992.

Discretionary Review Denied by Supreme Court March 11, 1993.

David O. Smith and Marcia A. Smith, Corbin, for appellant.

Barbara W. Jones, Mark A. Sipek and Suzanne D. Cordery, Corrections Cabinet, Frankfort, for appellees.

Before LESTER, C.J., and HAYES and JOHNSON, JJ.

HAYES, Judge:

David Moore's action on behalf of his wife was dismissed by the Board of Claims. The Franklin Circuit Court affirmed, and we do likewise.

Kimberly Moore was killed in an automobile accident on July 17, 1989. Her vehicle was struck by a truck being operated by one Tommy Irvin. At the time of the accident, Irvin was intoxicated and driving on a suspended license. He was also a probationer under the supervision of the Corrections Cabinet. Moore's husband filed an action before the Kentucky Board of Claims, seeking one-million ($1,000,000.00) dollars in damages. Essentially, Moore's claim alleged negligent supervision of Irvin by his parole officer. Moore charged that the parole officer knew, or should have known, that Irvin was driving on a suspended license and had previous convictions for speeding and driving while intoxicated. The Board of Claims dismissed Moore's complaint. The Franklin Circuit Court affirmed the board, concluding that the Cabinet, in supervising probated felons, was immune from liability. This is the primary thrust of Moore's appeal. The precise question presented for review is this: Can the Commonwealth be held liable for torts committed by probationers while under its supervision? The circuit court answered this question in the negative. For reasons that follow, we concur in this finding.

The concept of complete sovereign immunity was rejected in Kentucky many years ago. *Haney v. City of Lexington*, Ky., 386 S.W.2d 738 (1964). Carved out as a specific exception to this rule were governmental acts which are legislative, judicial, "quasi-legislative" or "quasi-judicial" in nature. *Id.* at 742. Needless to say, attempts to define these concepts with any precision have been less than successful. *See, Gas Service Co., Inc. v. City of London*, Ky., 687 S.W.2d 144, 148 (1985). Helpfully, our Supreme Court, in *Gas Service, supra*, referenced two cases which it believed to be reasonable examples of exempt conduct. In *Commonwealth Department of Banking and Securities v. Brown*, Ky., 605 S.W.2d 497 (1980), the misconduct alleged was the Commonwealth's failure to properly inspect and regulate certain financial institutions. In *Grogan v. Commonwealth*, Ky., 577 S.W.2d 4 (1979), the Commonwealth allegedly failed to properly enforce laws and regulations concerning safety standards for construction and use of buildings. Our Supreme Court observed that the government's conduct in these cases amounted to "regulatory function[s]," distinct from that of the private sector, and where, if liability were to arise for such conduct, a new tort would, of necessity, be created. The Court opined that "[i]n [*Brown* and *Grogan*] the government was not charged with having caused the injury, but only with having failed to prevent it by proper exercise of regulatory functions which have elements appearing quasi-judicial or quasi-legislative in nature." *Gas Service, supra* at 149.

We agree with the Franklin Circuit Court that the Cabinet's supervision of parolees falls within the zone of conduct as contemplated by *Brown* and *Grogan*. The duties entailed by such supervision are peculiar to the Cabinet and have no equivalent in the private sector. As in *Brown* and *Grogan*, the state is not charged with having caused Kimberly Moore's death, but by somehow failing to prevent it through proper supervision of Irvin.

While no case in Kentucky is precisely on point, the circumstances of *Cabinet for Human Resources v. Poore*, Ky.App., 711 S.W.2d 498 (1986), are substantially similar. Poore's administratrix brought an action before the Board of Claims alleging that the Cabinet had failed to exercise proper supervision of two juveniles who murdered

Poore while under the Cabinet's supervision. As in the case at bar, there was no attempt to hold the Cabinet accountable for the injury itself; rather, it was the Cabinet's alleged failure to regulate or supervise for which recompense was sought. The Court of Appeals concluded that no liability could attach to the Cabinet in its performance of this regulatory function. We find the circumstances of this case essentially identical to that in *Poore,* and we follow its lead. Thus, we conclude that the circuit court was correct in holding that the Corrections Cabinet was immune from liability in this regard.

■ We briefly dispose of Moore's complaint that the Board of Claims violated its own regulatory procedures by dismissing his claim without a hearing. The regulation in question, 108 KAR 1:010 § 2(10), provides in relevant part: "[i]f a response filed by the affected agency denies negligence in a claim whose value is $1,000 or greater, the secretary *shall* set a hearing before a hearing officer...." (Emphasis ours).

Moore claims that use of the word "shall" mandatorily entitled him to a hearing. The circuit court very sensibly opined that this regulation necessarily contemplates that a cause of action be stated before a hearing is afforded. We agree.

The judgment of the Franklin Circuit is affirmed.

LESTER, C.J., concurs.

JOHNSON, J., dissents by separate opinion.

JOHNSON, Judge, dissenting.

I respectfully dissent. It is generally true that the Cabinet's supervision of parolees falls within the zone of quasi-legislative or quasi-judicial activities referred to in prior cases. *See Cabinet for Human Resources v. Poore,* Ky.App., 711 S.W.2d 498 (1986); *cf. Bolden v. City of Covington,* Ky., 803 S.W.2d 577 (1991); *Com., Dept. of Banking & Securities v. Brown,* Ky., 605 S.W.2d 497 (1980); *Grogan v. Commonwealth,* Ky., 577 S.W.2d 4 (1979). Thus, in the ordinary case, the Cabinet will not be liable in damages simply because a parolee commits a tort. This is true even in these cases where the Cabinet supervises parolees who are likely to commit torts. *See Poore,* 711 S.W.2d at 498.

However, this case involves much more than negligent supervision. The form filed with the Board of Claims in this case reads, in part, as follows: "[Question:] In what way to (sic) you believe the state agency or employee was at fault? [Answer:] Corrections Cabinet Officer should have known thru supervision duties that Tommy Irvin's operator's license was suspended, DUI and speeding convictions *and should not have recommended him for truck driving employment.*" [Emphasis added.] Appellant has made it clear that the gist of his complaint is that the Corrections Officer acted tortiously when he took an active part in helping an alcoholic with no driver's license get a job driving a truck. The Claim Form clearly alleges a negligent misrepresentation by the Corrections Officer. Neither the Board of Claims nor the Majority Opinion addresses this point. I fail to see how such misrepresentations can possibly be classified as quasi-legislative or quasi-judicial.

In *Grogan,* the Supreme Court discussed the possibility of municipal liability for negligent failure to enforce laws and regulations.[1]

> There is, of course, the familiar principle that one who undertakes the care of another, or of his property, even though it be voluntary and without consideration, owes him the duty of reasonable care. But in the enactment of laws designed for the public safety a governmental unit does not undertake to perform the task; it attempts only to compel others to do it, and as one of the means of enforcing that purpose it may direct its officers and employes to perform an inspection function. The failure of its officers and employes to perform that function "does not constitute a tort committed against an individual who may incidentally suffer

1. The Commonwealth, under the Board of Claims Act, enjoys the same status as municipalities under the common law of this state. *Brown,* 605 S.W.2d at 499.

injury or damage, in common with others, by reason of such default." *City of Russellville v. Greer*, Ky., 440 S.W.2d 269, 271 (1969).

*Grogan*, 577 S.W.2d at 5.

The court explained itself further in *Brown*, saying:

When the governmental entity is performing a self-imposed protective function ..., the individual citizen has no right to demand recourse against it though he is injured by its failure to efficiently perform such function.

*Brown*, 605 S.W.2d at 499.

Nevertheless, the Supreme Court has also said that "[i]n the well-known words of former Chief Justice John Palmore, 'sovereign immunity should be limited strictly to what the Constitution demands, for the simple reason that in a civilized society it is morally indefensible.' [Citations omitted.]" *Calvert Investments v. Sewer Dist.*, Ky., 805 S.W.2d 133, 138 (1991).

It seems clear that the supervisory functions of the Corrections Cabinet are akin to the investigatory and regulatory functions discussed in *Grogan* and *Brown, supra. See Poore*, 711 S.W.2d 498; *cf. Bolden*, 803 S.W.2d 577. However, the issue in this case is whether the representations made by the Corrections Officer to Tommy Irvin's prospective employer can realistically be said to be a part of a "self-imposed protective function," as in *Brown, supra,* or alternatively, whether the representations were part of an attempt to compel others to comply with the law, as in *Grogan, supra.* I do not believe that the representations can be so construed. To the contrary, in this case the Commonwealth's agent undertook, without regard for public protection or compliance with the law, to assist in procuring employment as a driver for one who was obviously unsuited for such employment.

Although a government agency can issue regulations and conduct investigations in an utterly foolish and haphazard fashion and incur no liability, *see Grogan, supra,* if the agency undertakes to do something which persons in the private sector also do, and acts negligently, it will be liable. *Gas Service Co., Inc. v. City of London*, Ky.,

687 S.W.2d 144 (1985); *Calvert Investments, supra.* Here, the Corrections Cabinet cannot be liable for its failure to enforce its regulations prohibiting parolees from violating the law. Nevertheless, the Corrections Cabinet, like an employment agency, can be liable for making negligent misrepresentations in the course of helping to procure employment for Tommy Irvin. *See Restatement (Second) of Torts* § 311 (1965); 2 F.V. Harper & F. James, Jr., *The Law of Torts* § 7.6 (1982). ("Where misrepresentations entail the foreseeability of physical harm and such harm in fact results, the ordinary rules of negligence have for some time been applied. [Footnote omitted.]"); Prosser & Keeton, *The Law of Torts* §§ 33, 105, 107 (1984); *Garcia v. Superior Court*, 50 Cal.3d 728, 268 Cal. Rptr. 779, 789 P.2d 960 (1990) (parole officer, having chosen to communicate information about parolee, was under duty to use reasonable care); *Gutzan v. Altair Airlines, Inc.*, 766 F.2d 135 (3rd Cir.1985) (employment agency which made negligent misrepresentations in referring an employee who was a convicted rapist could be liable for that employee's rape of plaintiff co-employee); *Freeman v. United States*, 509 F.2d 626 (6th Cir.1975) (where air traffic controller negligently misrepresented the location of an airplane, the government and the controller could be liable for the deaths of the parachutists killed because of such negligence); *cf. Grayson Fraternal Order of Eagles v. Claywell*, Ky., 736 S.W.2d 328 (1987) (every person owes a duty to every other person to exercise ordinary care in his activities to prevent foreseeable injury—club which served alcohol to intoxicated patron liable to person later driven into by patron); *Graham v. John R. Watts & Son*, 238 Ky. 96, 36 S.W.2d 859 (1931) (one making false representations intended to be acted on when he should know truth is liable for resulting damages). In any case, the decision as to whether alleged governmental misconduct should be classified as quasi-legislative or quasi-judicial should not be made "until the proof is in." *See Calvert Investments v. Sewer Dist., supra* at 138–139. I would reverse and remand so that the Board of Claims

could hear the evidence in the case and make an informed decision.