**PRESNELL CONSTRUCTION MANAGERS, INC.**
Appellant,

v.

**EH CONSTRUCTION, LLC Appellee.**

**No. 2000–SC–0571–DG.**

Supreme Court of Kentucky.

May 20, 2004.

---

5. *Dame*, 628 S.W.2d at 627.

6. *Id.* at 626.

Walter J. Swyers, Jr., Louisville, Counsel for Appellant.

George Bruce Stigger, Alber Crafton, PLLC, John R. Shelton, Parker & O'Connell, PLLC, Louisville, Counsel for Appellee.

## OPINION OF THE COURT

### I. ISSUE

DeLor Design Group, Inc. ("DeLor"), the owner of a commercial building, contracted with Appellant, Presnell Construction Managers, Inc. ("Presnell"), to act as the construction manager for the building's renovation ("the Project"). DeLor also contracted with Appellee, EH Construction, LLC ("EH"), to provide "general trades" work for the Project. EH, claiming exclusively economic losses [1] from Presnell's failure to perform properly its contractual duty to coordinate the Project, filed a suit against Presnell in which it brought claims premised upon Presnell's alleged negligent misrepresentation and negligent supervision of the Project. The trial court found that, under the contract, Presnell owed a duty only to DeLor and therefore dismissed EH's claims against Presnell. Was EH entitled to maintain an action in tort against Presnell to recover for its alleged economic loss? Because we adopt § 552 of the Restatement (Second) of Torts as the standard for negligent mis-

---

1. "Economic loss" means "[a] monetary loss such as lost wages or lost profits." BLACK'S LAW DICTIONARY 530 (7th ed.1999).

577

representation in Kentucky, and because EH's complaint against Presnell alleged "Presnell ... supplied faulty information and guidance" to the Project's contractors, we hold that the trial court improperly dismissed EH's claim for negligent misrepresentation against Presnell. Accordingly, we affirm the Court of Appeals and remand this case to the trial court for further proceedings.

## II. BACKGROUND

The material facts involving the issues now before this Court are straightforward and undisputed. In May 1996, DeLor, as part of its efforts to renovate a commercial building owned by it, contracted with Presnell to act as construction manager for the Project. DeLor and Presnell completed and signed an American Institute of Architects ("AIA") document styled, "Standard Form of Agreement Between Owner and Construction Manager where the Construction Manager is NOT a Constructor." The contract set forth the duties and obligations that DeLor and Presnell owed to each with respect to the Project, and paragraph 10.7 of the contract provides: "Nothing contained in this Agreement shall create a contractual relationship with or a cause of action in favor of a third party against either the Owner or the Construction Manager."

Later, in March 1997, DeLor contracted with EH to furnish what the contract referred to as "general trades" work for the Project. DeLor and EH completed and signed an AIA document styled, "Standard Form of Contract Between Owner and Contractor." The contract set forth the

duties and obligations that DeLor and EH owed to each other with respect to the Project. Paragraph 1.1.20 of Article 1 of the contract provides:

The Contractor agrees that nothing contained in the Contract Documents or any agreement between the Owner and the Construction Manager or the Owner and the Design Professional creates any contractual relationship between the Construction Manager ... and the Contractor. The Contractor waives any right the Contractor may have as an alleged third-party beneficiary of any such agreements and covenants not to sue the Construction Manager ... as a third-party beneficiary of such agreements.

And, finally, paragraph 2.1.1 of Article 2 of the contract provides: "The Construction Manager shall administer the Contract as described herein. The Construction Manager in performing under this Contract is acting as the Owner's principal agent in all matters regarding this Contract."

After the signing of the contracts, both Presnell and EH, along with other contractors and subcontractors on the Project, proceeded to renovate DeLor's building under their contracts with DeLor.

However, in November 1997, EH filed a mechanics' and materialman's lien in the sum of $268,218.00 against the real property on which the Project was located for unpaid materials and labor that EH claimed that it had furnished to DeLor for the Project. In February 1998, EH filed suit to enforce its lien against DeLor,[2] Presnell, and others.[3] EH also sought to

**2.** Article 14 of the contact between DeLor and EH provides that all disputes "relating to this contract or the breach thereof" shall first be mediated and, if the mediation is unsuccessful, submitted to binding arbitration. Accordingly, EH's claim against DeLor was dismissed by the trial court because of the

arbitration clause in their contract and referred to arbitration. Consequently, this claim is not before this Court.

**3.** The owners of the real estate on which the building was located and another lienholder were joined as necessary parties to the law-

recover damages for its economic losses, which EH alleged were the result of Presnell's alleged negligent misrepresentation and negligent supervision of the Project.[4] Specifically, EH's complaint alleged that Presnell failed "to properly stage and time the work involved" for the Project and that as a result, EH "was required to redo much of the work that it had already completed, due to the other contractors and subcontractors coming in and subsequently destroying work that had already been completed by [EH]." Additionally, EH alleged that "Presnell was careless and negligent in coordinating the Project, and supplied faulty information and guidance and supervision to the contractors working on the Project."

Presnell filed a motion to dismiss EH's negligence claims on the ground that it owed no duty to EH.[5] The trial court agreed, found that Presnell's duties under the contract were owed exclusively to De-Lor, and dismissed EH's claim against Presnell. The Court of Appeals, however, adopted § 552 and held that EH's tort claim against Presnell was actionable because, under § 552, Presnell owed independent duties, *i.e.*, "a duty to EH to exercise reasonable care or competence in its supervision, collection, and distribution of information and directions that it provided to EH for guidance." As a result, the Court of Appeals reversed the trial court and remanded the case for trial on EH's negligent misrepresentation claim against Presnell.[6] We granted Presnell's motion for discretionary review, and we now affirm the decision of the Court of Appeals.

## III. ANALYSIS

A proper analysis and resolution of the issues presented by this appeal requires an analysis of two (2) separate topics, *i.e.:* (1) privity of contract and (2) the tort of negligent misrepresentation. We will discuss each topic in turn and then apply them to this case.

---

suit because of their interests in the real property. EH did not seek a personal judgment against these other parties.

4. EH also alleged a breach of contract claim against Presnell. This claim was dismissed by the trial court and EH does not contest the trial court's ruling.

5. We would note that no discovery was taken by the parties on EH's claim against Presnell, and that Presnell, in fact, did not file an answer to EH's complaint. However, since the trial court considered matters outside the complaint in connection with Presnell's motion to dismiss, it appropriately treated Presnell's motion to dismiss as a motion for summary judgment. CR 12.02 ("If, on a motion asserting the defense that the pleading fails to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment....."); *Johnson v. Lohre*, Ky., 508 S.W.2d 785, 788 (1974) ("[CR 12.02] provides that if a motion to dismiss is made and matters outside the pleadings are presented, the motion shall be treated as one for summary judgment with supporting affidavits."); *Craft v. Simmons*, Ky.App., 777 S.W.2d 618 (1989).

6. It is unclear from the Court of Appeals's opinion whether the opinion reinstated EH's separate claim against Presnell for negligent supervision. Although it appears that the Court of Appeals's reversal of the trial court was premised solely on its adoption of § 552, the language of the opinion, *i.e.*, "In so doing, we hold that the trial court erred in determining that EH, a contractor, could not maintain an action for negligent misrepresentation and *supervision* against Presnell, the construction manager, with whom EH had no privity of contract[,]" (emphasis added) might be construed as reinstating what EH refers to as its "ordinary negligence claim against Presnell." We find it more likely that the Court of Appeals erroneously treated EH's negligent supervision allegations as part of its negligent misrepresentation claim.

## A. PRIVITY OF CONTRACT

■ "Privity of contract" is "[t]he relationship between parties to a contract, allowing them to sue each other but preventing a third party from doing so."[7] Thus, "[o]rdinarily, the obligations arising out of a contract are due only to those with whom it is made; a contract cannot be enforced by a person who is not a party to it or in privity with it, except under a real party in interest statute or, under certain circumstances, by a third-party beneficiary."[8] Consequently, "[a]s a general rule, whenever a wrong is founded upon a breach of contract, the plaintiff suing in respect thereof must be a party or privy to the contract, and none but a party to a contract has the right to recover damages for its breach against any of the parties thereto."[9]

■ "It is well established that a third person may, in his own right and name enforce a promise made for his benefit even though he is a stranger both to the contract and to the consideration."[10] But, "[n]ot every contract will give one who is not privy thereto a right of action therein, even though such third party might have received a benefit from the completion of the contract."[11] Only a third-party who was intended by the parties to benefit from the contract, namely, a donee or a creditor beneficiary, has standing to sue on a contract; an incidental beneficiary does not acquire such right.[12]

■ Although privity is no longer required to maintain a tort action,[13] "one who is not a party to the contract or in privity thereto may not maintain an action for negligence which consists merely in the breach of the contract."[14] Accordingly, unless Presnell breached some duty to EH apart from its duties to DeLor under the

7. BLACK'S LAW DICTIONARY 1217 (7th ed.1999).

8. 17A AM. JUR. 2D, *Contracts* § 425 (1991).

9. *Id. See also Sexton v. Taylor County*, Ky. App., 692 S.W.2d 808, 810 (1985) ("It is the law in this jurisdiction that no stranger to a contract may sue for its breach unless the contract was made for his benefit.").

10. 17A AM. JUR. 2D, *Contracts* § 435 (1991).

11. *B & C Construction Co. v. Grain Handling Corp.*, 521 S.W.2d 98, 101 (Tex.Civ.App.1975).

12. *Sexton*, 692 S.W.2d at 810 ("Parties for whom these contracts are made fall into two classes—donee beneficiaries and creditor beneficiaries. 'One is a donee beneficiary if the purpose of the promisee in buying the promise is to make a gift to the beneficiary. A person is a creditor beneficiary if the promisee's expressed intent is that the third party is to receive the performance of the contract in satisfaction of any actual or supposed duty or liability of the promisee to the beneficiary.' ") (quoting *King v. National Industries, Inc.*, 512 F.2d 29, 33 (6th Cir.1975)); *B & C Construction Co.*, 521 S.W.2d at 101–2.

13. *Tabler v. Wallace*, Ky., 704 S.W.2d 179, 186 (1985) (observing "the demise of the erroneous defense of privity in negligence cases"); *C.D. Herme, Inc. v. R.C. Tway Co.*, Ky., 294 S.W.2d 534, 537 (1956) ("The ancient so-called 'general rule' of the manufacturer's non-liability for negligence *to* persons with whom he has no contractual relation, followed by this Court in *Olds Motor [Works v. Shaffer*, 145 Ky. 616, 140 S.W. 1047 (1911)], has been abandoned by substantially all modern authorities. Upon reconsideration, we now determine also to abandon it and we hereby expressly overrule the Olds Motor case." (citation omitted)).

14. *Penco, Inc. v. Detrex Chemical Industries, Inc.*, Ky.App., 672 S.W.2d 948, 951 (1984) (quoting *B & C Construction Co.*, 521 S.W.2d at 102–03). *See also Kevin Tucker & Associates, Inc. v. Scott & Ritter, Inc.*, Ky.App., 842 S.W.2d 873, 874 (1992) ("Scott & Ritter conclude that any time an act constitutes both a tort and a breach of contract, the plaintiff must waive the tort and sue in contract. We do not believe that this is now or ever was the law.").

contract—*i.e.* an independent duty—EH, who was, at the most, an incidental beneficiary of the contract between DeLor and Presnell, cannot maintain an action in negligence against Presnell. In order to determine whether such an independent duty exists, we next turn to the tort of negligent misrepresentation.

## B. NEGLIGENT MISREPRESENTATION

■ A majority of jurisdictions have adopted Restatement (Second) of Torts § 552, which outlines the elements of negligent misrepresentation as follows:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

(3) The liability of one who is under a public duty to give the information extends to loss suffered by any of the class of persons for whose benefit the duty is created, in any of the transactions in which it is intended to protect them.[15]

Although Kentucky appellate courts have long recognized the tort of fraudulent misrepresentation and delineated its elements,[16] we have neither adopted § 552 nor explicitly recognized the tort of negligent misrepresentation as it relates to either economic loss or physical harm.[17] Nevertheless, Kentucky's appellate courts have cited § 552 with approval, and have otherwise suggested that Kentucky recognizes a tort action for negligent misrepresentation. In *Seigle v. Jasper*,[18] the Court of Appeals held that an attorney's duty to exercise ordinary care in the performance

15. RESTATEMENT (SECOND) OF TORTS § 552 (1977).

16. *Cresent Grocery Co. v. Vick*, 194 Ky. 727, 240 S.W. 388, 389 (1922) ("We have adopted the general rule that an action cannot be maintained for fraud or deceit unless it be made to appear (1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with intention of inducing plaintiff to act, or that it should be acted upon by the plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that plaintiff thereby suffered injury."); *Investors Heritage Life Ins. Co. v. Colson*, Ky.App., 717 S.W.2d 840, 842

(1986) ("In order to sustain an action for fraud, there must be clear and convincing evidence of (a) a material representation, (b) which is false, (c) known to be false or made recklessly, (d) made with inducement to be acted upon, (e) acted in reliance thereon, and (f) causing injury."). *See also* RESTATEMENT (SECOND) OF TORTS § 525 (1965); 2 JOHN S. PALMORE, KENTUCKY INSTRUCTIONS TO JURIES (CIVIL) §§ 31.01–31.09 (Anderson Publishing Co.1989).

17. *See generally* RESTATEMENT (SECOND) OF TORTS § 311 (1965); *Moore v. Commonwealth*, Ky.App., 846 S.W.2d 715 (1992) (Johnson, J. dissenting).

18. Ky.App., 867 S.W.2d 476 (1993).

of a title examination for the lending bank extended to the purchasers of the real property, and the Court noted that its "holding is consistent with" § 552.[19] Then, in *Morton v. Bank of the Bluegrass and Trust Co.*,[20] the Court of Appeals indicated that negligent misrepresentation was a recognized tort in this jurisdiction when it ruled that "[t]o the extent that the complaint asserts a cause of action for negligent misrepresentation, summary judgment in favor of the appellees/cross-appellants was appropriate, as only compensatory damages are allowed for this claim."[21] And, in *Chernick v. Fasig–Tipton Kentucky, Inc.*,[22] the Court of Appeals ruled that Fasig–Tipton had a duty to use ordinary care to ensure that information provided a prospective purchaser at its consignment auction sale was as accurate as possible, and that its "fail[ure] to do so, breach[ed] its duty, and thereby exhibited negligent behavior toward the purchasers who justifiably relied upon the information contained in the catalog of sale."[23] The *Chernick* court "did not use the term 'negligent misrepresentation,' nor did it cite the Restatement, but its message was certainly consistent[,]"[24] *i.e.*, negligent misrepresentation is actionable in Kentucky.

The federal courts have made different predictions as to whether this Court would recognize the tort of negligent misrepresentation as set forth in § 552.[25] Although the federal decisions are persuasive, they are not binding precedent; however, we take particular notice of *Ingram Industries, Inc. v. Nowicki*.[26] In that case, which involved "the scope of liability of an accountant for negligence causing loss to a third party,"[27] then-Federal District Judge Scott Reed, former Chief Justice of this Court and an eminent Kentucky jurist, concluded that this Court, "if it were confronted with the issue" would adopt the standards set out in § 552.[28] Judge Reed noted that "[t]here has been a steady and continuing development in this area of law[,]"[29] and that "the strict and restrictive view ... is no longer completely via-

19. *Id.* at 482.

20. Ky.App., 18 S.W.3d 353 (1999).

21. *Id.* at 358.

22. Ky.App., 703 S.W.2d 885 (1986).

23. *Id.* at 890.

24. 13 David J. Leibson, KY. PRACT. TORT LAW, § 19.3 (2003).

25. *See, e.g., Miller's Bottled Gas, Inc. v. Borg–Warner Corp.*, 955 F.2d 1043, 1053 (6th Cir. 1992) (divided court predicted that based on its conclusion that Kentucky would preclude Miller's product-liability claim for negligence resulting in purely economic injury, it "likewise conclude[d] that [Kentucky] would not allow recovery under a theory of negligent misrepresentation."); *Scheck Mechanical Corp. v. Borden, Inc.*, 186 F.Supp.2d 724, 734 (W.D.Ky.,2001) ("We have recognized that, based upon Kentucky's general adoption of the Restatement in other tort situations, Ken-

tucky would recognize this standard for negligent misrepresentation."); *Goldman Services Mechanical Contracting, Inc. v. Citizens Bank & Trust Co. of Paducah*, 812 F.Supp. 738, 742 (W.D.Ky.,1992) ("Based upon Kentucky's general adoption of the Restatement in other tort situations, the court concurs with that conclusion.").

26. 527 F.Supp. 683 (E.D.Ky., 1981).

27. *Id.* at 684.

28. *Id.* ("The Court concurs with the conclusions reached by Judge Siler in the apparently unreported case of *American States Insurance Co. v. William D. Morris*, et al., Civ. Action No. 2372 (E.D.Ky. May 31, 1978). In that case, Judge Siler declared that, in his view, Kentucky would adopt the standards set out in Restatement (Second) Torts, Section 552 (1977)").

29. *Id.*

ble." [30]   And, in accordance with the "steady and continuing development" to which Judge Reed alluded, "many courts have now recognized that under some restrictive circumstances the defendant may be under a duty of care to make his representations accurately and may be liable for a limited measure of damages to a limited group of persons if his negligent misrepresentations induce justifiable reliance to the plaintiff's loss." [31]   In fact, "[m]ost courts have adopted the Restatement's position or something close to it." [32]   Because we find § 552 to be consistent with Kentucky case law, we join the majority of jurisdictions and hereby adopt § 552's standards for negligent misrepresentation claims in this jurisdiction.

## C.  APPLICATION OF LAW TO PRESENT CASE

■ After noting that no privity existed between Presnell and EH, the trial court held that Presnell owed "duties and responsibilities under its contract" only to DeLor.  And, as Presnell "had no duty to [EH]," the trial court ruled that "[r]elief, if any, for [EH] would be against DeLor." Accordingly, the trial court granted summary judgment to Presnell on EH's tort claims against it.  In its appeal to the Court of Appeals, EH argued that the existence of a duty on Presnell's part did not require privity and urged the adoption of § 552.[33]  The Court of Appeals agreed that privity is not a prerequisite for a tort action in Kentucky, and then, being per-

suaded to follow the lead of the Tennessee Supreme Court in *John Martin Co. v. Morse/Diesel, Inc.*,[34] it adopted § 552.  Accordingly, the Court of Appeals held "that the trial court erred in determining that EH, a contractor, could not maintain an action for negligent misrepresentation and supervision against Presnell, the construction manager, with whom EH had no privity of contract."  We agree that privity is not necessary to maintain a tort action, and, by adopting § 552, we agree that the tort of negligent representation defines an independent duty for which recovery in tort for economic loss is available.  Therefore, we agree with the Court of Appeals's conclusion that EH could maintain a tort action for negligent misrepresentation against Presnell under the pleadings in this case and the limited facts developed to this point.

■ Specifically, Presnell's duty under § 552 was not to supply *false information*,[35] and EH's complaint alleges that "Presnell ... supplied faulty information and guidance" to the Project's contractors. This allegation was sufficient to avoid what was essentially a dismissal for failure to state a claim for relief.  It may develop during discovery or trial that EH cannot prove the elements of the independent tort of negligent misrepresentation, but at this time, EH's complaint sufficiently states a claim against Presnell for negligent misrepresentation.  However, EH's claim for negligent supervision of the Project does

30.  *Id.* (citation omitted).

31.  2 Dan B. Dobbs, THE LAW OF TORTS § 472 (West Group 2001).

32.  *Id.* at § 480.

33.  Presnell does not oppose the adoption of § 552 and even concedes that it might apply to a construction manager under other circumstances.

34.  819 S.W.2d 428 (Tenn.1991).

35.  See RESTATEMENT (SECOND) OF TORTS § 552 cmt. a ("[L]iability under the rule stated in this Section is based upon negligence of the actor in failing to exercise reasonable care or competence in supplying correct information ....").

not articulate a claim that is independent of Presnell's contractual duties. Accordingly, the trial court did not err in dismissing that claim.

## IV. CONCLUSION

For the foregoing reasons, we affirm the Court of Appeals and vacate the trial court's summary judgment dismissing the complaint.

All concur. KELLER, J., also concurs by separate opinion in which GRAVES, J., joins.

Concurring opinion by Justice KELLER.

I agree with the result reached by the majority and vote to affirm the decision of the Court of Appeals. I write separately, however, to express my view that EH's common law negligence claim against Presnell for negligent *supervision* of the project is barred not only by the rule that the majority applies, *i.e.*, "one who is not a party to the contract or in privity thereto

may not maintain an action for negligence which consists merely in the breach of the contract," [1] but also by the economic loss rule, which Kentucky appellate courts have implicitly applied in the past. I believe this Court should expressly adopt the economic loss rule in order to encourage contracting parties to allocate such risks themselves.

The "economic loss rule" [2] is a judicially created doctrine [3] that "marks the fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others." [4] "The crux of the doctrine is not privity but the premise that economic interests are protected, if at all, by contract principles, rather than tort principles." [5] Although originally rooted primarily in product liability cases to protect manufacturers from tort liability for damage that is limited to the product itself,[6] the economic loss rule

1. *Penco, Inc. v. Detrex Chemical Industries, Inc.*, Ky.App., 672 S.W.2d 948, 951 (1984) (quoting *B & C Construction Co. v. Grain Handling Corp.*, 521 S.W.2d 98, 102–03 (Tex. Civ.App.1975)).

2. The "economic loss rule" is also referred to as "economic harm rule" and "economic loss doctrine." BLACK'S LAW DICTIONARY 531 (7th ed.1999).

3. Matthew S. Steffey, *Negligence, Contract, and Architects' Liability for Economic Loss*, 82 KY. L.J. 659, 660 n. 6 (1994) ("The economic loss rule[] ... is usually traced to *Robins Dry Dock & Repair Co. v. Flint*, 275 U.S. 303, 309, 48 S.Ct. 134, 72 L.Ed. 290 (1927)[.]"). *But see* R. Joseph Barton, Note, *Drowning in a Sea of Contract; Application of the Economic Loss Rule to Fraud and Negligent Misrepresentation Claims*, 41 WM. & MARY L.REV. 1789, 1794 (2000) ("The economic loss rule is a judicially created doctrine, first articulated by the California Supreme Court in *Seely v. White Motor Co.* [63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965) ]").

4. Sidney R. Barrett, Jr., *Recovery of Economic Loss in Tort for Construction Defects: a Critical Analysis*, 40 S.C. L. REV. 891, 894–895 (1989) (hereinafter "Barrett"). *See also SME Industries, Inc. v. Thompson, Ventulett, Stainback and Associates, Inc.*, 28 P.3d 669, 680 (Utah 2001) ("The economic loss rule is a judicially created doctrine that marks the fundamental boundary between contract law, which protects expectancy interests created through agreement between the parties, and tort law, which protects individuals and their property from physical harm by imposing a duty of reasonable care." (citation omitted)).

5. Barrett, *supra* note 4 at 895.

6. *See Seely v. White Motor Co.*, 403 P.2d 145 (1965) (truck); *East River S.S. Corp. v. Transamerica Delaval, Inc.*, 476 U.S. 858, 866, 106 S.Ct. 2295, 2299–2300, 90 L.Ed.2d 865 (1986) (turbines for supertankers) ("Products liability grew out of a public policy judgment that people need more protection from dangerous products than is afforded by the law of war-

"has evolved into a modern, general prohibition against tort recovery for economic loss."[7] "In its broadest formulation, the economic loss rule prohibits tort recovery in negligence or products liability 'absent physical injury to a proprietary interest.'"[8] "Under this sweeping rule, recovery of economic loss is foreclosed when a product or service falls short of an expected level of quality yet causes no personal injury or property damage."[9]

Although the economic loss rule has been adopted by a majority of courts[10] and discussed extensively in published articles,[11] the rule's parameters remain somewhat unclear in many jurisdictions because the rule "is stated with ease but applied with great difficulty."[12] Apparently, much of the difficulty arises because the traditional articulation of the economic loss rule is subject to exceptions[13] and is not applicable in all situations because certain common law actions that sound in tort permit, and, in fact, are limited to the recovery of economic loss.

Two landmark decisions in the development of the economic loss rule are *Seely v. White Motor Company*,[14] which is generally recognized as the genesis of the rule, and *East River S.S. Corp. v. Trans-*

---

ranty. It is clear, however, that if this development were allowed to progress too far, contract law would drown in a sea of tort." (citation omitted)).

**7.** Steffey, *supra* note 3 at 674.

**8.** *Id.* at 674–75 (footnote omitted). *See also SME Industries, Inc.*, 28 P.3d at 680 ("Simply put, the economic loss rule holds that 'economic damages are not recoverable in negligence absent physical property damage or bodily injury.'" (footnote and citations omitted)); 86 C.J.S. *Torts* § 26(a) (1997) ("The economic loss rule bars recovery in tort when a party suffers economic loss unaccompanied by personal injury or property damage." (footnote omitted)); BLACK'S LAW DICTIONARY 531 (7th ed.1999) ("economic-loss rule" is "[t]he principle that a plaintiff cannot sue in tort to recover for purely monetary loss—as opposed to physical injury or property damage.").

**9.** Steffey, *supra* note 3 at 675 (footnotes omitted); W. PAGE KEETON ET AL., PROSSER AND KEETON ON THE LAW OF TORTS § 92, at 657 (5th ed. 1984) ("Generally speaking, there is no general duty to exercise reasonable care to avoid intangible economic loss or losses to others that do not arise from tangible physical harm to persons and tangible things.").

**10.** Christopher Scott D'Angelo, *The Economic Loss Doctrine: Saving Contract Warranty Law from Drowning in a Sea of Torts*, 26 U. TOL. L. REV. 591, 607 (1995) ("The majority of courts have adopted the economic loss rule and do not allow recovery in tort for purely economic losses, regardless of the risk imposed.").

**11.** For a small sample *see* John I. Spangler, III & William M. Hill, *The Evolving Liabilities of Construction Managers*, 19 CONSTRUCTION LAW 30, 35 n. 11 (1999) (observing that "[t]here is no dearth of articles addressing the destruction of the doctrine of privity, the economic loss rule, and the evolving tort liabilities of design professionals to third parties for negligence" and citing eleven (11) law review articles that address those topics in the construction law context). We would additionally observe that a Westlaw search for "economic loss rule" will find more than 1,000 articles.

**12.** *Sandarac Ass'n, Inc. v. W.R. Frizzell Architects, Inc.*, 609 So.2d 1349, 1352 (Fla.Dist.Ct. App.1992), *overruled by implication by Moransais v. Heathman*, 744 So.2d 973 (Fla.1999). Paul J. Schwiep, *The Economic Loss Rule Outbreak: The Monster That Ate Commercial Torts*, FLA. B.J., Nov. 1995, at 34 ("[I]t is clear that judges, lawyers and commercial clients alike are all desperately struggling to define the parameters of the economic loss doctrine.")

**13.** For various exceptions recognized by courts *see* 86 C.J.S. *Torts* § 26(b) (1997).

**14.** 403 P.2d 145 (Cal.1965).

*america Delaval, Inc.,*[15] which firmly established the rule as part of American product liability jurisprudence. In both cases, recovery was sought in tort solely for economic loss resulting from a defective product—a defective truck in *Seely* and defective turbines for supertankers in *East River.* These cases set forth the rationale for the economic loss rule. In *Seely* the court stated:

> The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the 'luck' of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products. He can appropriately be held liable for physical injuries caused by defects by requiring his goods to match a standard of safety defined in terms of conditions that create unreasonable risks of harm. He cannot be held for the level of performance of his products in the consumer's business unless he agrees that the product was designed to meet the consumer's demands. A consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will. Even in actions for negligence, a manufacturer's liability is limited to damages for physical injuries and there is no recovery for economic loss alone. [Restatement of Torts Second (Tent. Draft No.

10) s 402A] similarly limits strict liability to physical harm to person or property.[16]

And in *East River,* the Supreme Court, after quoting approvingly from *Seely,* added:

> When a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong.
>
> The tort concern with safety is reduced when an injury is only to the product itself. When a person is injured, the "cost of an injury and the loss of time or health may be an overwhelming misfortune," and one the person is not prepared to meet. In contrast, when a product injures itself, the commercial user stands to lose the value of the product, risks the displeasure of its customers who find that the product does not meet their needs, or, as in this case, experiences increased costs in performing a service. Losses like these can be insured. Society need not presume that a customer needs special protection. The increased cost to the public that would result from holding a manufacturer liable in tort for injury to the product itself is not justified.[17]

Although Presnell has not specifically referenced the economic loss rule in support of its argument that EH should be prohibited from asserting tort claims against it, the rule is clearly implicated, if not inexorably intertwined, with the legal arguments presented and authorities relied upon by the parties in this case. The omission of specific reference to the economic loss rule in the parties' briefs is likely traceable to the fact that no Kentucky appellate decision has ever used the

15. 476 U.S. 858, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986).

16. *Seely,* 45 Cal.Rptr. 17, 403 P.2d at 151.

17. *East River,* 476 U.S. at 871–872, 106 S.Ct. at 2302.

specific phrase, "economic loss rule,"[18] much less indicated its approval or adoption of the rule. However, while neither this Court nor the Court of Appeals has expressly articulated or relied upon the economic loss rule in a published opinion, both courts have applied the rule's principles without identifying their source.

In *Dealers Transport Co. v. Battery Distributing Co.*, Ky.App., 402 S.W.2d 441 (1965)[19] this Court's predecessor adopted § 402A of the Restatement (Second) of Torts [20] and, thus, eliminated privity of contract in product liability claims based on breach of implied warranty "for physical harm thereby caused to the ultimate user or consumer, or to his property[.]" Although the issue of whether harm to person or property included harm to the defective product itself was neither presented nor addressed in *Dealers Transport Co.*, twenty-five (25) years later, in *Falcon Coal Co. v. Clark Equipment Co.*,[21] the issue was dispositive.[22] In that case, Falcon Coal had purchased a front-end loader from Clark Equipment, the loader's manufacturer. The loader was destroyed by a fire, allegedly caused by a manufacturing defect, and Falcon Coal brought a strict liability claim against Clark Equipment for the loss of the loader. Denying Falcon Coal's tort claim, the Court of Appeals stated:

> Section 402A of the Restatement (Second) of Torts provides in relevant part that "[o]ne who sells *any product* in a defective condition unreasonably dangerous to the user or consumer or *to his property* is subject to liability for physical harm thereby caused to the ultimate user or consumer, or *to his property* ....." Our reading of this section, as well as the official comment to it, convinces us that Section 402A is aimed at imposing liability for physical harm caused by an unreasonably dangerous product to the user or his other property, *but not for harm caused only to the product itself.* The term "his property" simply does not appear to be intended to embrace within its meaning the term "any product" as those terms are used in Section 402A. Inasmuch as this section

---

**18.** Thomas R. Yocum & Charles F. Hollis III, *The Economic Loss Rule in Kentucky: Will Contract Law Drown in a Sea of Tort?*, 28 N. KY. L. REV. 456, 467 (2001) (observing that *Bowling Green Municipal Utilities v. Thomasson Lumber Co.*, 902 F.Supp. 134 (W.D.Ky. 1995) was "the first case in Kentucky to use the specific phrase 'Economic Loss Rule'" and that the federal district court did so only after this Court declined the court's request to certify whether Kentucky would apply the economic loss rule to the facts of the case).

**19.** Ky., 402 S.W.2d 441 (1965).

**20.** RESTATEMENT (SECOND) TORTS § 402A (1964):

> (1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability *for physical harm* thereby caused *to the ultimate user or consumer,* or *to his property,* if

> (a) the seller is engaged in the business of selling such a product, and
> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
> (2) The rule stated in Subsection (1) applies although
> (a) the seller has exercised all possible care in the preparation and sale of his product, and
> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller. (emphasis added).

**21.** Ky.App., 802 S.W.2d 947 (1990).

**22.** *Id.* at 948 ("The only question raised as phrased by the appellant is whether it may recover from the appellee manufacturer 'in a product liability tort action based upon the doctrine of strict liability where the subject damage is limited to the product itself.'").

now has been adopted by our highest court as the standard for recovery in strict liability tort cases, and from our reading of this section, it would not permit such recovery in a case like this, we are left to conclude that as it now stands the common law in this jurisdiction does not support the appellant's position.[23]

The court then pointed out that the Uniform Commercial Code may provide a contractual remedy to Falcon Coal.[24] And, although the Court of Appeals cited *East River*, as a policy decision by the United States Supreme Court, *i.e.*, "that the better policy where injury is to the product alone is to leave the purchaser with only his contractual remedy[,]"[25] the Court of Appeals noted that it was not required to make such a policy decision in the case before it because its holding was based on an interpretation of § 402A, which this Court had "adopted .... as the policy in this jurisdiction."[26] The Court of Appeals concluded by stating that until this policy was changed by the Kentucky Supreme Court or the General Assembly, "there is no remedy based upon strict liability in tort [for injury limited to the product itself]."[27] Accordingly, Falcon Coal's recovery for its economic loss was limited to any contractual remedy that might be available, and thus, the Court of Appeals adopted, albeit *sub silentio*, the economic-loss-rule principle that bars recovery for economic loss based upon strict liability in tort.

The "economic loss rule," although, again, not referred to as such, came before this Court in *Real Estate Marketing, Inc. v. Franz*.[28] Therein, the second purchasers of a house sued the builder for structural defects.[29] Seeking only economic loss, *i.e.*, the diminution in the house's value, the purchasers alleged, *inter alia*, that the builder had been negligent in constructing the house. This Court first stated that it had recognized in *Saylor v. Hall*, Ky.App., 497 S.W.2d 218 (1973)[30] "a legal obligation to respond in damages [for personal injury and death] for negligent construction despite the absence of privity."[31] Then, citing *Dealers Transport Company, Inc.*, this Court addressed the purchasers' argument that "it seems capricious to deny recovery to a vigilant property owner who discovers a latent defect, which 'only' diminishes the value of his property, and allow recovery if he 'waited'

---

**23.** *Id.* (first two emphases in original and last emphasis added). This holding by the Court of Appeals is supported by the RESTATEMENT (THIRD) OF TORTS: PRODUCTS LIABILITY § 21 (1998) which provides:

For purposes of this Restatement, harm to persons or property includes economic loss if caused by harm to:
(a) the plaintiff's person; or
(b) the person of another when harm to the other interferes with an interest of the plaintiff protected by tort law; or
(c) *the plaintiff's property other than the defective product itself*. (emphasis added).

**24.** *Falcon Coal*, 802 S.W.2d at 948 ("Sections of [the Uniform Commercial Code], KRS 355.2–314 and 355.2–315, provide a contractual remedy in a case such as this where the product sold proves to be unfit for its ordinary use.").

**25.** *Id.*

**26.** *Id.* at 949.

**27.** *Id.*

**28.** Ky., 885 S.W.2d 921 (1994).

**29.** The purchasers also sued the sellers, but the trial court severed the case against the builder from the case against the sellers for the purpose of appeal.

**30.** Ky., 497 S.W.2d 218 (1973).

**31.** *Real Estate Marketing, Inc.*, 885 S.W.2d at 926.

for a member of his family to be injured as a result of the defect[,]"[32] by stating:

> Nevertheless, this Court recognizes that tort recovery is contingent upon damage from a destructive occurrence as contrasted with economic loss related solely to diminution in value, even though, as to property damage, both may be measured by the cost of repair.[33]

We added a caveat, however, that appeared to limit the economic loss rule, at least as it applied to product liability cases:

> We do not go so far as the Court of Appeals' opinion in *Falcon Coal Co. v. Clark Equipment Co.*, limiting recovery under a products liability theory to damage or destruction of property "other" than the product itself. But we do recognize that to recover in tort one cannot

prove only that a defect exists; one must further prove a damaging event. The Court of Appeals' opinion herein recognized this limitation as to the claim of negligence, but held it does not apply to warranty and statutory claims, and we agree.[34]

Although the Court of Appeals in *Falcon Coal Co.* touched upon a principle of the rule—no tort action where the injury is to the product alone—as it applies to product liability cases, and we did likewise in *Real Estate Marketing, Inc.*—no tort recovery in negligence for economic loss related solely to diminution in value—as it applies to negligence cases, Kentucky has not expressly adopted the economic loss rule, much less addressed its parameters; I suggest that we do so now.

---

32. *Id.* We would note that the vigilant property owner, when he purchased the house, could have bargained with the seller for a contract or warranty to cover latent defects in the house so that he could later enforce his expectancy of a defect free house. The contrary view "fails to account for the need to keep products liability and contract law in separate spheres and to maintain a realistic limitation on damages." *East River*, 476 U.S. at 870–871, 106 S.Ct. at 2302.

33. *Real Estate Marketing, Inc.*, 885 S.W.2d at 926. Like the United States Supreme Court, we fail to see a distinction based on the manner in which the product is injured. *East River*, 476 U.S. at 870, 106 S.Ct. at 2302 ("Nor do we find persuasive a distinction that rests on the manner in which the product is injured. We realize that the damage may be qualitative, occurring through gradual deterioration or internal breakage. Or it may be calamitous. But either way, since by definition no person or other property is damaged, the resulting loss is purely economic. Even when the harm to the product itself occurs through an abrupt, accident-like event, the resulting loss due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law."). Some courts, however, have recognized what is referred to as the "acci-

dent exception" to the economic loss rule. *See Vulcan Materials Co., Inc. v. Driltech, Inc.*, 251 Ga. 383, 306 S.E.2d 253, 257 (1983); *Advanced Drainage Systems, Inc. v. Lowman*, 210 Ga.App. 731, 437 S.E.2d 604, 607 (1993).

34. *Real Estate Marketing, Inc.*, 885 S.W.2d at 926 (citation omitted). *See also Gooch v. E.I. Du Pont de Nemours & Co.*, 40 F.Supp.2d 863, 875 n. 5 (W.D.Ky.,1999) ("In *Real Estate Marketing, Inc. v. Franz*, the Kentucky Supreme Court stated that '[w]e do not go so far as the Court of Appeals' opinion in Falcon Coal .... limiting recovery under a products liability theory to damage or destruction of property 'other' than the product itself.'" Thus, it appears on first glance that Kentucky would reject the economic loss doctrine. However, in *Real Estate Marketing*, the Supreme Court addressed whether homeowners who were not the original purchasers could assert a viable negligence claim against a homebuilder for structural defects. This case can be distinguished from cases, such as the present one, "that traditionally merit the application of the economic loss rule, in that it does not involve a transaction between a commercial buyer and seller." In the present case, Gooch and DuPont are commercial buyers and commercial sellers." (citations omitted)).

I agree with the economic loss rule's underlying rationale—*i.e.*, the need to establish a boundary between contract law and tort law so that "parties to a contract may allocate their risks by agreement and [will] not need the special protections of tort law to recover for damages caused by breach of contract." [35] Accordingly, I would hold that the economic loss rule is applicable to Kentucky tort claims.

Generally, courts adopting the economic loss rule have simply stated that tort recovery is prohibited in negligence or products liability solely for economic loss.[36] But, in *Town of Alma v. Azco Const., Inc.*[37] the Colorado Supreme Court observed that a more accurate indicator of whether an action is appropriate in tort is the source of the duty upon which the tort claim is premised:

> The key to determining the availability of a contract or tort action lies in determining the source of the duty that forms the basis of the action. We find the following discussion by the South Carolina Supreme Court informative:
>
> > The question, thus, is not whether the damages are physical or economic. Rather the question of whether the plaintiff may maintain an action in tort for purely economic loss turns on the determination of the source of the duty [the] plaintiff claims the defendant owed. A breach of a duty which arises under the provisions of a con-

tract between the parties must be redressed under contract, and a tort action will not lie. A breach of a duty *arising independently* of any contract duties between the parties, however, may support a tort action.

Determining when a contract action will lie and when a tort action will lie requires maintaining this distinction in the sources of the respective obligations. The phrase "economic loss rule" necessarily implies that the focus of the inquiry under its analysis is on the type of damages suffered by the aggrieved party. However, the relationship between the type of damages suffered and the availability of a tort action is inexact at best. Examining the type of damages suffered may assist in determining the source of the duty underlying the action (e.g., most actions for lost profits are based on breaches of contractual duties while most actions involving physical injuries to persons are based on common law duties of care). However, some torts are expressly designed to remedy pure economic loss (e.g., professional negligence, fraud, and breach of fiduciary duty). It is here that substantial confusion arises from the use of the term "economic loss rule." This confusion can be avoided, however, by maintaining the focus on the source of the duty alleged to have been violated.[38]

The Colorado Supreme Court recognized, however, "that some special relationships

---

**35.** 86 C.J.S. *Torts* § 26(a) (1997).

**36.** Mark A. Olthoff, *If You Don't Know Where You're Going, You'll End Up Somewhere Else: Applicability Of Comparative Fault Principles In Purely Economic Loss Cases*, 49 DRAKE L. REV. 589 (2001) ("The economic loss doctrine generally provides that tort recovery in negligence actions is precluded when the damages are limited to pecuniary harm.").

**37.** 10 P.3d 1256 (Colo.2000).

**38.** *Town of Alma*, 10 P.3d at 1262–63 (quoting *Tommy L. Griffin Plumbing & Heating Co. v. Jordan, Jones & Goulding, Inc.*, 320 S.C. 49, 463 S.E.2d 85, 88 (1995)) (emphasis added).

by their nature automatically trigger an independent duty of care that supports a tort action even when the parties have entered into a contractual relationship[,]"[39] and identified certain relationships that Colorado had recognized as creating an independent duty of care—*i.e.*, an attorney-client relationship, a physician-patient relationship, a physician's independent medical examination of a non-patient, and the quasi-fiduciary nature of a insurer-insured relationship. The court "also recognized that certain common law claims that sound in tort and are expressly designed to remedy economic loss may exist independent of a breach of contract claim[,]"[40] and gave as examples common law fraud and negligent misrepresentation.[41] The Colorado Supreme Court concluded its prefatory comments by stating:

> In these situations where we have recognized the existence of a duty *independent* of any contractual obligations, the economic loss rule has no application and does not bar a plaintiff's tort claim because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule.[42]

And, after noting that "[t]he question of whether a defendant owes a plaintiff a duty to act to avoid injury is a question of law to be determined by the court[,]"[43] the court "expressly adopt[ed] the economic loss rule[,]"[44] and held "that a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law."[45] I find the Colorado Supreme Court's articulation of the economic loss rule to be consistent with prior decisions of the Kentucky appellate courts,[46] and I would therefore adopt it as the economic loss rule in this jurisdiction.

With this Court's adoption today of Restatement (Second) of Torts § 552, we have created the independent tort action of negligent misrepresentation, which is not barred by the economic loss rule. Because EH's ordinary negligence claim for economic loss resulting from Presnell's alleged negligent supervision of the Project does not articulate a duty independent of Presnell's contractual duties, however, I would hold it is barred by the economic loss rule.

For the foregoing reasons, I too would affirm the Court of Appeals and vacate the

**39.** *Id.* at 1263.

**40.** *Id.*

**41.** The court cited to *Keller v. A.O. Smith Harvestore Prods., Inc.*, 819 P.2d 69, 73 (Colo. 1991) as a case where negligent misrepresentation was a tort claim based "not on principles of contractual obligation but on principles of duty and reasonable conduct." *Town of Alma*, 10 P.3d at 1263. It is important to note, however, that the negligent misrepresentation claim in *Keller* was based upon alleged representation made by the defendant prior to the execution of the contract.

**42.** *Town of Alma*, 10 P.3d at 1263.

**43.** *Id.* at 1264.

**44.** *Id.*

**45.** *Id. Accord Hermansen v. Tasulis*, 48 P.3d 235, 240 (Utah 2002) (expressly adopting and quoting the Supreme Court of Colorado's interpretation of the rule, the Supreme Court of Utah stated: "Therefore, the initial inquiry in cases where the line between contract and tort blurs is whether a duty exists independent of an contractual obligations between the parties. When an independent duty exists, the economic loss rule does not bar a tort claim 'because the claim is based on a recognized independent duty of care and thus does not fall within the scope of the rule.'").

**46.** *See* discussion *supra* Part III(A).

trial court's summary judgment dismissing the complaint.

GRAVES, J., joins this concurring opinion.